(No. 18836.—

M. F. DUNLAP *et al.* Plaintiffs in Error, *vs.* CHARLES M. PEIRCE *et al.* Defendants in Error.

*Opinion filed October 19, 1929.*

JOHN J. REEVE, and JOHN A. BELLATTI, for plaintiffs in error.

H. J. THOMPSON, and GEORGE C. WEAVER, (CHARLES M. PEIRCE, *pro se,* of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here by *certiorari* to review the judgment of the Appellate Court which reversed and remanded a decree of the circuit court of Pike county foreclosing a mortgage given by defendants in error against certain lands in that county. The notes secured by the mortgage were made payable to plaintiffs in error Otis E. Taylor and William H. Petefish and by them assigned to plaintiff in error M. F. Dunlap. The mortgage is dated December 17, 1924, and shows that it is made to secure notes aggregating $90,000 of that date, payable in certain amounts on January 1, 1927, January 1, 1928, and January 1, 1929, with the balance falling due July, 1929. The mortgage covers 1000 acres of land, more or less, in Pike county. The bill alleges that default having been made in the payment of interest, election was made, as authorized by the mortgage, to declare the whole sum due.

Defendants in error answered the bill, denying the material allegations thereof, and filed a cross-bill, averring that on December 13, 1924, plaintiff in error Taylor and his wife entered into a written contract with defendants in error by the terms of which Taylor was to convey to defendant in error Peirce the said 1000 acres of land, subject to a first mortgage of $60,000, with interest accruing thereon after January 1, 1925, and in payment therefor the defendants in error were to convey to Taylor, or whomsoever he might direct, three separate tracts of land in Missouri, amounting to 982.93 acres, subject to mortgages amounting to $102,500 and certain assessments for roadways and ditches, and to make and deliver the mortgage and notes here sued on. The cross-bill alleges that in addition to the consideration for the notes here sought to be

foreclosed, defendants in error are entitled, under the contract, to certain credits on the last of the notes, which credits arose out of the conditions of the liens on the Missouri land and will be hereinafter discussed. The cross-bill further alleges that the deeds were made and exchanged between the parties in accordance with the terms of the contract; that the original contract further recites that a second mortgage of $20,000 existed against the Pike county land, and that the defendants in error were to retain $70,000 of the notes given by them until the second mortgage was settled and released and so shown of record. The cross-bill further charges that certain objections were found to the title, which defendant in error Peirce required to be remedied; that while he was in possession of the $70,000 in notes and entitled thereto under the original contract, Taylor borrowed them from him on the statement that he desired to show them to some parties in Jacksonville, but that instead of so doing he attempted to sell them in the city of Bloomington, where defendant in error Peirce resides, greatly to Peirce's damage and detriment; that on January 17 a supplemental written agreement was executed between defendant in error Peirce and plaintiffs in error Taylor, William H. Petefish and Claude C. Petefish, which recited the former agreement and set out that the plaintiffs in error did not at that time have a merchantable title; that the property was subject to a second mortgage of $22,688.88; that the deeds provided for in the original contract had been executed and delivered and placed on record, and that in order that no one suffer loss the notes were to be placed in the hands of the Farrell State Bank of Jacksonville, Illinois, together with a copy of the supplemental agreement, to be held by the bank until it was directed to release and deliver the same to plaintiffs in error Taylor and the Petefishes, Peirce on his part agreeing that when the title to the premises is quieted and an abstract furnished showing merchantable title, with thirty days to

examine the same, he would give to the bank a written order releasing the notes, providing Taylor and the Petefishes had complied with their agreement *in toto* of December 13, 1924. The supplemental agreement further appointed F. H. Blackburn, of Jacksonville, receiver to collect the rents from the tenants and pay the interest on the first mortgage, special assessments, etc., and such residue as remains after paying for repairs or seed, to be applied on interest on the $90,000 note until the notes were released in accordance with the agreement, expense of such receiver to be borne by plaintiffs in error Taylor and the Petefishes. These provisions constitute the substance of the original and supplemental written agreements.

It is averred in the cross-bill that the $90,000 notes had by fraud come into the possession of plaintiff in error Dunlap; that Taylor and the Petefishes did not carry out their agreement; that the defendants in error had not consented to or directed the release of the notes, and that the notes had not been taken from the possession of the Farrell State Bank by any legal proceedings brought against defendants in error. The cross-bill also charges that the original contract and supplemental contract, and the deeds of defendants in error issued in accordance therewith, were procured by fraudulent misrepresentations of Taylor, upon which Peirce relied. It is averred that Taylor represented the cash market value of the Pike county land to be $250 per acre and that it had recently sold for over $200 an acre, in cash; that the lands were well drained and drains had good outlets; that Peirce relied upon these representations; that they were false; that Taylor also represented that he was the owner of the Pike county lands and had plenty of means at hand to take up whatever amount was then due on the Missouri mortgages which were about to be foreclosed, and that Peirce told him that such a foreclosure proceeding would greatly damage and injure the credit of Peirce. It is also alleged that the Pike county

lands do not contain 1000 acres of land but only about 945 acres. It is further alleged that defendant in error Peirce was damaged by a judgment which had been entered against him in the sum of $3000 for attorneys fees and costs in the circuit court of Pike county in the matter of a bill to quiet title on the Pike county land, which expenses were to be paid by plaintiffs in error Taylor and the Petefishes. The cross-bill also alleges great damage by reason of offering for sale the notes executed by defendants in error to various banks in Bloomington contrary to the original agreement, as a result of which Peirce had various loans called and was compelled to secure others and was greatly injured in his business. Other instances of failure to carry out the agreement and supplemental agreement are alleged in the bill and will be later referred to. The cross-bill prays that plaintiffs in error be found guilty of fraud, that their rights be determined and damages assessed, and that it be adjudged there was nothing due on the notes and that they be canceled.

Plaintiffs in error Taylor and the Petefishes filed an answer, in which they denied the material allegations of the cross-bill and set up that they had performed all of the conditions of the original and supplemental agreements; that they had caused the second mortgage of $22,688.88 to be released of record, caused the title to be cleared showing it subject only to the $60,000 first mortgage, and that it was therefore the duty of the bank to deliver possession of the notes to plaintiffs in error Taylor and the Petefishes; that defendant in error Peirce failed to notify the Farrell State Bank to turn over the notes; that plaintiff in error Dunlap, as assignee of the notes, sued out a writ of replevin causing the notes to be delivered to him, but the bank notified Peirce of the replevin and to take charge of the same, and that the circuit court of Morgan county adjudged the title and right to possession of the notes to be in Dunlap,

which judgment remains in full force and effect and not appealed from.

Plaintiff in error Dunlap also filed an answer to the cross-bill, denying knowledge of the execution of the contracts, denying the alleged breach of the agreements, denying allegations of damage in the cross-bill, and other material allegations of the cross-bill. He by his answer alleged that at the time he purchased the notes and mortgage he had no knowledge of the controversy between Taylor, the Petefishes and Peirce; denied fraud in obtaining possession of the notes, and alleged that plaintiffs in error had fully performed their contract and that the notes had been replevied.

The cause was referred to the master, who heard the evidence and filed a report recommending that the cross-bill be dismissed, that a decree foreclosing the mortgage be entered, after deducting a credit of $12,700 to defendants in error, for the sum of $88,379.69, and the lands ordered sold subject to the first mortgage. The Appellate Court reversed this decree and remanded the cause to the circuit court, with directions to enter a decree dismissing the original bill for want of equity, without prejudice, however, to Dunlap to seek subrogation for the amount of moneys advanced by him, to pay off the second mortgage to the amount of $20,000, with interest from January 1, 1925.

For most part the averments of the cross-bill are substantiated by the evidence, and in the discussion of the facts those matters which clearly appear from the proof will be treated as established without a discussion of the evidence while the allegations closer on the facts will be more fully discussed.

Plaintiff in error Dunlap seeks to foreclose the mortgage in question as an assignee. Taylor, soon after the execution of the notes and mortgage, transferred his interest in them to William H. Petefish, who later assigned

them to Dunlap. Neither Taylor nor Petefish, who were partners in real estate trading, had title to the Pike county land but the title was in plaintiff in error Claude C. Petefish, son of William H. Petefish. William H. Petefish testified that Dunlap's interest was merely as assignee, for the purpose of collateral, by reason of the fact that Dunlap advanced the money to pay off the $22,688.88 second mortgage. It is not disputed that under such facts Dunlap's rights are subject to any defense that might be urged against Taylor or the Petefishes. This has been the rule in this State since *Olds* v. *Cummings,* 31 Ill. 188, *White* v. *Sutherland,* 64 id. 181, and *Allen* v. *Henn,* 197 id. 486. The rule also applicable in this case, as shown by the case of *White* v. *Sutherland, supra,* and *Allen* v. *Henn, supra,* is, that one who through fraudulent representations is induced to give notes and mortgages, may, when foreclosure is commenced, present his claim for damages in recoupment against such notes and mortgages. (*Schuchmann* v. *Knoebel,* 27 Ill. 175; 2 Kent's Com.—11th ed.—638, note C.) In this case defendants in error are not seeking a rescission of the contract but are seeking recoupment in damages as against the foreclosure of the notes and mortgage. This they have a right to do. (*White* v. *Sutherland, supra.*) In their cross-bill they allege seven grounds of recoupment. These will be discussed together with the evidence tending to support or refute them.

The first ground is as to the value of the Pike county land. Defendant in error Peirce testifies that Taylor told him that the Pike county land had, within three months previous to the date of their conversation, December 13, 1924, sold for $200 per acre, cash. In this testimony Peirce is corroborated by J. F. Skaggs and Mary Gorman, who were present at the time of the execution of the original contract. One Henry Nearstheimer also testified to the same effect. Taylor denied making this statement, but testified that he told Peirce that another tract of 357 acres not far

from there sold for $200 an acre. Skaggs and Mary Gorman deny that he made such statement. Charles Rousey testified that he came to Bloomington with Taylor on December 13 and was with him all the time Taylor was there, and that Taylor was talking of another tract of land when he stated that it had been sold for $200 per acre. Rousey's testimony is affected by the testimony of Skaggs, Peirce and Gorman, who stated that Rousey was in the office but a few minutes at a time during the morning and left early in the afternoon, and that he could not have heard the conversation of the parties. Nearstheimer, who was Taylor's agent and who brought the parties together in this transaction and was paid a commission by Taylor and the Petefishes, later changed his testimony, and stated that the tract of land that Taylor was talking about was the 357-acre tract. Nearstheimer's testimony is of little value, as is that of Rousey. The evidence in this matter shows that Taylor did make a statement that the land had been sold for $200 an acre a few months previous to December 13, 1924. This was not the statement of an opinion but was a statement of fact very material to the transaction, and if relied upon by defendants in error was fraud sufficient to vitiate the transaction or to afford a basis for recoupment. *White* v. *Sutherland, supra; Tuck* v. *Downing,* 76 Ill. 71.

It is argued even though such false and fraudulent statements were made, yet Peirce did not rely upon them, and they did not, therefore, induce the execution of the contracts and deeds. In support of this argument it is said the evidence shows that defendant in error Ella B. Peirce, with the son of defendants in error, went upon the land prior to the execution of the deeds, and that subsequent thereto, and prior to the execution of the supplemental agreement on January 17, Peirce was on the land and must be held to have used his own judgment concerning the value of the land. If such were the proof this argument would be sound only as to appearance of the land and those charac-

teristics which might have been seen on such visits. The evidence does not clearly show that Mrs. Peirce and the son of defendants in error visited this land prior to the making of the deeds. A witness was offered who testified that a young man who said his name was Peirce and who said his mother was with him, asked at the hotel in New Canton the way to this farm, which was about three and a half miles distant; that it was Sunday, the 14th of December; that it was late Sunday afternoon. A tenant on the farm testified that defendant in error Peirce was on the farm on January 2, 1925, prior to making the supplemental agreement but after the execution of the deeds, notes and mortgage. The fact that Peirce was on the land after the deeds were executed does not show that he did not rely upon the truth of the statement of Taylor that the farm had been sold a few months previous for the sum of $200 per acre. Peirce testified that he had no knowledge of a visit by his wife and son to the premises. The deeds to the properties traded and the mortgages and notes were executed on December 17 and the fraudulent statement as to the sale price of this land was made on December 13, at the time of the execution of the original contract. A recent sale for cash may in such a case be considered as evidence of the value of the land. We are of the opinion that Peirce relied, and had a right to rely, upon this fraudulent statement. The evidence is that the land is worth not over $80 per acre. Peirce in purchasing it took it subject to a first mortgage of $60,000 and gave his notes for $90,000, which brought the price of the land up to $150,000, or $150 an acre. He also gave his equity in the Missouri land. Therefore Peirce was induced to give $70,000, plus the value of his equity in the Missouri land, if it had any value, more than the Pike county land was worth.

Defendants in error claim the right to recoup for the loss of their equity in the Missouri land. The mortgages covering this land were foreclosed and by reason of the

character of mortgage there existing were not subject to redemption. Those lands were sold and passed from the parties to this proceeding. The loss of Peirce's equity in this land, if such equity was of any value over and above the mortgages, would be a proper item of recoupment. The evidence of Taylor is that he investigated the land and found it was not worth anything over and above the mortgages and that he gave to the mortgagee a quit-claim deed to the Missouri land for five dollars. While Peirce in his testimony placed a value on the Missouri land, he also testified that he did not know what it was worth; that he did not think it was mortgaged for all it was worth. The record does not contain sufficient evidence of what, if any, damage he suffered by loss of his equity in the Missouri land, and therefore such loss cannot be recouped here.

A third element of damage which Peirce seeks to recoup against the foreclosure of this mortgage is the attempt on the part of some of plaintiffs in error to sell his notes at the banks in Bloomington after the making of the original contract and prior to the making of the supplemental contract. The original contract provided that possession of $70,000 of the notes should remain in Peirce pending the clearing of the title to the Pike county land. The evidence is that Taylor, who had procured from Peirce the possession of $70,000 of these notes, or someone for him, attempted to sell them. While Peirce testifies that he was thus damaged to the extent of $25,000, he offers no other evidence as to the amount of such damage and gives no basis for such sum. He testified that some of his loans were called and he was compelled to obtain security for other loans. Other witnesses stated that in their opinion he was damaged but they did not know how much. The record does not show the amount of damages which he would be entitled to recoup by reason of this wrongful attempt to sell his notes to the banks in Bloomington. A court of equity is not called upon to conjecture as to his

losses, and therefore cannot say that he is entitled to recoup any amount of such damages. Peirce also claims damage for keeping him out of possession of the Pike county farm, but this claim is without basis, for the reason that by the supplemental agreement possession of the farm was given to one Blackburn, who held possession under that agreement until a receiver was appointed by the court when the foreclosure proceedings were started. Peirce is entitled to the benefit of an accounting of the receiver appointed by the court.

Defendants in error also claim damage to Peirce because of failure on the part of Taylor to take the Missouri land and pay the amount of principal, interest and taxes due on the mortgages at the time of the transaction. It is sufficient to say that the contract and supplemental agreement executed by these parties do not require that the mortgages either on the Missouri land or the Pike county land be assumed by the party taking title to such property.

It is also claimed that Peirce was damaged because in the bill filed in Pike county to clear the title to this Pike county land, in which his name was used as complainant, a judgment was entered against him for costs in the amount of $3000, including attorney's fees, and that he heard of the judgment against him the next day in Bloomington. This element of damage, if it existed, is wholly conjectural, and moreover the judgment was paid by plaintiffs in error, who had agreed to conduct the bill to quiet title in Peirce's name but at their own expense.

There is also a claim of defendant in error Peirce that he is entitled, under the contract, to have credited on the note maturing July 1, 1929, being the last note of the series, the sum of $24,700, by reason of the language of the original contract relating to the liens on the Missouri land. This clause of the original contract is ambiguous and its construction is not a matter of agreement by the parties. The original contract, after describing the Missouri land and

reciting the liens thereon, states that the transfer of such lands is made subject to those liens, "together with accrued interest and unpaid taxes amounting to not to exceed $12,700, and subject to a right of way and public roads and drainage ditches." It is next provided in the original contract as follows: "It is mutually agreed by the parties that whereas the lands being conveyed by the second party [Peirce] are each subject to one first lien, [describing them,] and there being accrued interest and taxes on said premises unpaid, it is mutually agreed by and between the parties that the residue hereinabove specified that the deeds are made subject to, is to be credited by the party of the first part on note maturing July 1, 1928, [evidently referring to note maturing July 1, 1929,] hereafter to be given by the party of the second part. The interest on said indebtedness and taxes and assessments to be figured to January 1, 1925." It is impossible to determine just what this paragraph of the contract means. The evidence shows that plaintiffs in error offered to credit on the note mentioned such sum as should be agreed upon as proper to be credited thereon and asked Peirce to send a statement to them of what he claimed in that regard. Peirce, however, replied that they could figure it as well as he from the contract and sent no such statement. Certainly the request of plaintiffs in error was a reasonable one in view of the ambiguous language of the contract, and in the absence of proof of any statement of claim on Peirce's part and the ambiguity existing in the contract, Peirce has not shown damages which may be recouped in this proceeding.

There remains, therefore, one element of damage which the proof shows amounts to $70,000 and which should be recouped against these notes as of their date of execution. The Appellate Court held that the bill to foreclose should be dismissed without prejudice to plaintiff in error Dunlap to seek subrogation for the amount of moneys advanced to pay off said second mortgage to the amount of $20,000.

Subrogation is the substitution of another person in the place of a creditor or claimant to whose rights he succeeds in relation to the debt or claim asserted, which has been paid by him involuntarily, and contemplates some original privilege on the part of him to whose place substitution is claimed. There must exist the relation of principal and surety or guarantors, or other relation between the parties which would entitle such person to succeed to any rights of the creditor or claimant. (*Fuller* v. *Davis' Sons*, 184 Ill. 505; Bispham's Equity, sec. 335; *Home Savings Bank* v. *Bierstadt*, 168 Ill. 618.) The doctrine of subrogation has no application to the facts in this case. There is no relation of principal and surety, guarantors, or other relation between the parties giving rise to such right, and the Appellate Court erred in so holding.

Plaintiff in error Dunlap sues as assignee of the mortgage, and, as we have seen, is subject to defenses good against his assignor. Those defenses in this case justify a recoupment in the sum of $70,000 against the $90,000 notes. As such assignee Dunlap is entitled to foreclosure of this mortgage in the sum of $20,000, with interest from January 1, 1925, less such credits, if any there be, as may be shown by the report of the receiver appointed by the court.

The decree of the circuit court and the judgment of the Appellate Court are reversed and the cause remanded to the circuit court, with directions to enter a decree for foreclosure and sale in accordance with the views herein expressed.

*Reversed and remanded, with directions.*