**John T. HENRY and Evelyn I. Henry, Plaintiffs-Appellants,**

**v.**

**FARMER CITY STATE BANK, an Illinois Banking Corporation, et al., Defendants-Appellees.**

Nos. 86–1024, 86–1127, 86–1451 and 86–1534.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1986.

Decided Dec. 29, 1986.

Jack C. Vieley, Peoria, Ill., for plaintiffs-appellants.

James R. Morrison, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., Jerome P. Lyke, Hatch, Blockman, McPheters & Fehenbacher, Michael R. Cornyn, Thomas, Mamer & Haughey, Champaign, Ill., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Plaintiffs appeal the district court's dismissal of their fifty-eight page, thirty-count amended complaint alleging claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and 42 U.S.C. § 1983 against twenty-nine defendants. We affirm the dismissal of the amended complaint.

Plaintiffs also appeal the district court's order enjoining ongoing state court proceedings which the plaintiffs initiated in Illinois circuit court after their federal court complaint had been dismissed and while their appeal of that dismissal was pending. Because the district court lacked jurisdiction to enjoin the state court proceedings, we must reverse the order granting the injunction.

---

[*] The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. In its December 17, 1985, order dismissing the RICO defendants, the district court found that the Henrys had already assigned the subject property to the Bank in 1978, as "collateral security for payment of any principal and interest of the Assignors [the Henrys], now or hereafter payable to the order of Farmer City State

## I. *The Proceedings Below*

This case arose out of an ordinary mortgage foreclosure in state court. Plaintiffs John and Evelyn Henry were the beneficial owners of certain business real estate in Farmer City, Illinois. The property was held in a land trust. On July 24, 1980, the Farmer City State Bank ("the Bank") loaned the Henrys $60,000, and they executed a promissory note in favor of the Bank. To secure the payment of the indebtedness, the Henrys signed a Letter of Direction ordering their land trustee, the Champaign National Bank, to place a mortgage on their business property. The Henrys allege that the letter only directed the trustee to place a first mortgage on the property to secure the $60,000 loan, and that the Bank later inserted additional language, without the Henrys' knowledge or consent, directing the trustee to place a second mortgage on the property to secure payment of a preexisting debt which the Henrys owed the Bank in the approximate amount of $345,000. This prior debt was evidenced by a promissory note executed by the Henrys on February 7, 1980.[1] Pursuant to the Letter of Direction, the Champaign National Bank proceeded to execute both a first and a second mortgage on the Henrys' business property in favor of the Farmer City State Bank.

The Henrys defaulted on both of the loans, and on April 14, 1982, the Bank filed a two-count complaint in Illinois circuit court seeking foreclosure of the two mortgages. A judgment of foreclosure was entered against the trustee and plaintiff Evelyn Henry on March 9, 1983, and against plaintiff John Henry on June 13, 1983. The property was sold to the Bank for $170,000 at a foreclosure sale on November 28, 1983. The Henrys moved to set aside the sale on

Bank." The February 7, 1980, promissory note also indicates on its face that payment of the note was secured by a "mortgage on real estate in DeWitt County." Thus, at the time that the Letter of Direction was executed and allegedly forged on July 24, 1980, the title to the property was already encumbered by the Bank with the $345,000 prior debt which was the subject of the second mortgage.

the ground that John Henry failed to receive notice of the sale. Finding that the sale was in total compliance with the Illinois Mortgage and Foreclosure Act, Ill. Rev.Stat. ch. 95, ¶ 23 *et seq.* (1981), the court confirmed the sale and entered deficiency judgments against Evelyn Henry in the amount of $86,998.37 and against John Henry in the amount of $95,464.14.

The Henrys challenged both the foreclosure and the deficiency judgments on appeal to the Illinois appellate court, raising three specific arguments. First, they argued that the trial court erred in entering the deficiency judgments against them because (1) the complaint failed to allege the Henrys' personal liability, and (2) they were only guarantors, and not makers, of the promissory notes evidencing the two loans. Second, they argued that the trial court erred in confirming the foreclosure sale because the bank failed to notify John Henry of the impending sale. Finally, they argued that the trial court erred in calculating the amounts of the mortgage indebtedness. The Illinois appellate court rejected all of the Henrys' arguments and affirmed the judgments of the circuit court. *Farmer City State Bank v. Champaign National Bank*, 138 Ill.App.3d 847, 93 Ill.Dec. 200, 486 N.E.2d 301 (4th Dist.1985), petition for leave to appeal denied. At no time during the foreclosure proceedings, either at trial or on appeal, did the Henrys ever claim that the second mortgage was a forgery or obtained through fraud.

On July 3, 1985, the Henrys filed a complaint, which was later amended on October 18, 1985, in federal district court. The thirty-count amended complaint alleged RICO and 42 U.S.C. § 1983 claims against twenty-nine defendants. The Henrys sued everyone even remotely connected with the mortgage foreclosures: the auctioneer who cried the foreclosure sale, the moving company that confiscated and transported the Henrys' personal property, the Sheriff and the State's Attorney of DeWitt County, the City of Farmer City and its Chief of Police, the Chevrolet dealer and dealership that leased the property after it was purchased by the Bank, the Champaign National Bank as land trustee, the Henrys' former attorney, and a former employee of John Henry, as well as the directors, officers, and attorneys of the defendant Farmer City State Bank. In a series of orders, the district court dismissed the peripheral defendants for lack of subject matter jurisdiction in December 1985.[2]

The RICO claims against the Bank and its directors, officers, and attorneys alleged that the defendants had engaged in a purported scheme of racketeering activity to defraud the Henrys through use of the mails and interstate wires in violation of 18 U.S.C. §§ 1341, 1343, and state laws making extortion and intimidation felony crimes. The Henrys claimed for the first time that the second mortgage in the amount of $345,000 was a forgery and that the underlying obligation to the Bank was unlawful. They further alleged that the defendants had knowingly filed forged and false documents and pleadings in the state court foreclosure action. On December 17, 1985, the district court dismissed the RICO claims against all of the defendants because the Henrys had alleged no pattern of racketeering, the Henrys had alleged no facts indicating that the underlying debt of $345,000 was false, and the Henrys had suffered no injury to their "business or property by reason of a violation of [RICO] § 1962." 18 U.S.C. § 1964(c).

The § 1983 claims against the City of Farmer City, its Chief of Police, and the Sheriff and the State's Attorney of DeWitt County alleged unspecified violations of the Constitution and laws of the United States

---

**2.** The RICO claims against defendants Phillip Lamkin, Raymond Moss, Obermeyer Transfer Co., and James Richmond were dismissed for lack of subject matter jurisdiction. The RICO claim against Champaign National Bank was dismissed because the Henrys failed to allege that the Bank had engaged in a pattern of racketeering activity. The RICO claims against Bill Perhay Chevrolet, Inc. and Bill Perhay were dismissed because they were entitled to lease and enter the subject property pursuant to an Illinois circuit court order giving the Farmer City State Bank exclusive possession of the premises on April 29, 1982.

arising out of their actions in executing the foreclosure judgments. In a series of orders in December 1985, the district court dismissed the § 1983 claims against all of the defendants for failure to state a claim.[3]

On December 27, 1985, and January 21, 1986, the Henrys filed notices of appeal with the district court. While these appeals were pending, the Henrys filed a complaint on February 4, 1986, in Illinois circuit court. The complaint named eight defendants: the Bank, two of its officers and its attorney, Champaign National Bank, the Chevrolet dealer and dealership that took possession of the Henrys' property after the sale, and the Henrys' former attorney. The factual basis of the state court complaint was the same as that of the federal court complaint, but instead of alleging RICO violations, the complaint alleged common law fraud, conspiracy, trespass, and legal malpractice causes of action, seeking compensatory and punitive damages in addition to equitable relief.

To thwart the Henrys' attempt to carry on the litigation in state court, the RICO defendants petitioned the district court to issue an injunction enjoining the state court proceedings and prohibiting the Henrys from filing any further complaints against any of the original federal court defendants based on any set of facts arising out of the mortgage foreclosures.[4] The district court granted the requested injunction on March 10, 1986, 630 F.Supp. 844. The Henrys appeal the order issuing the injunction.

## II. *The RICO Claims*

The district court concluded that the plaintiffs had failed to make out a cause of action under RICO and therefore dismissed the RICO claims against all of the defendants. Although we find no error in that conclusion, the district court should not have reached the merits of the RICO claims. We hold that plaintiffs' RICO claims are barred by the doctrine of *res judicata* because they failed to raise their fraud claims as a defense in the state court mortgage foreclosure proceedings initiated by the Bank.

■ The traditional doctrine of *res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In determining the preclusive effect of a prior state court judgment, a federal court must give the same full faith and credit to the judgment that it would receive in the courts of the state in which it was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *Allen*, 449 U.S. at 96, 101 S.Ct. at 415; 28 U.S.C. § 1738.

If federal preclusion law were controlling here, this case would be easily disposed by our recent decision in *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926 (7th Cir.1986). In *Rudell* we held that the doctrine of *res judicata* bars a party from subsequently raising claims based on facts which could have constituted a defense or counterclaim to a prior proceeding if the "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Id.* at 928 (quoting Restatement (Second) of Judgments § 22(2)(b)). Although recognizing that in most instances a defendant's failure to raise a defense or a counterclaim in a prior action will not bar him from raising a related claim in a subsequent proceeding, we nevertheless observed:

---

**3.** The district court has retained jurisdiction over this case to consider imposing sanctions under Fed.R.Civ.P. 11 and costs under Fed.R. Civ.P. 54(d), 28 U.S.C. § 1919, and 28 U.S.C. § 1927 (counsel's liability for excessive costs) against the Henrys and their attorney pending the outcome of this appeal.

**4.** The injunction order did not cover those defendants whose claims were dismissed for lack of subject matter jurisdiction. See *supra* note 2.

Both precedent and policy require that res judicata bar a counterclaim when its prosecution would nullify rights established by the prior action. Judicial economy is not the only basis for the doctrine of res judicata. Res judicata also preserves the integrity of judgments and protects those who rely on them.

*Id.* (quoting *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1085 (7th Cir.), certiorari denied, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979)).

■ For purposes of determining the *res judicata* effect of a judgment, a "cause of action" is not limited to those issues that were or might have been offered to sustain the claim; it is also deemed to comprise all defenses that were or might have been offered. See *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 945 (7th Cir.1981); *Martino,* 598 F.2d at 1084. As the Supreme Court stated long ago:

[A judgment on the merits] is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example; a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence.

*Cromwell v. County of Sac,* 4 Otto 351, 352, 94 U.S. 351, 352, 24 L.Ed. 195 (1876). See *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940).

Other than the fact that the preclusive prior judgment was rendered by a federal district court rather than a state court, the situation confronting this Court in *Rudell* was virtually identical to that presented here. The Rudells were franchisees of a corporation which provided computerized accounting services. A dispute arose between the corporation and the Rudells, and the corporation invoked the provision of the franchise agreement which provided for mandatory and binding arbitration of disputes between the parties. The Rudells did not appear at the arbitration proceeding, and the arbitrator awarded the corporation both damages and equitable relief. The arbitration award was confirmed by a district court and affirmed on appeal by this Court, which rejected the Rudells' claim that the arbitration provision in the franchise agreement was invalid. The Rudells then filed a suit in federal district court alleging that the entire franchise agreement was procured by fraud in violation of RICO. The district court ruled that the Rudells' action was barred as *res judicata* because they had failed to raise their fraud claims as a defense in either the arbitration proceeding itself or the confirmation proceeding before the district court.

On appeal this Court affirmed the district court's ruling that the Rudells' RICO action was barred. We concluded that allowing the Rudells to raise their fraud claims to challenge the validity of the franchise agreement would undermine rights established in the arbitration and confirmation proceedings. If the Rudells were allowed to proceed and ultimately received the damages they sought, the monetary judgment awarded the corporation in the arbitration proceeding would have been meaningless. Similarly, even if the Rudells were able to have the franchise agreement set aside, their duties and obligations under the agreement would presumably have continued to be enforced pursuant to the arbitration award of equitable relief. Concluding that permitting the Rudells to pursue their RICO claims would "open to reexamination the rights [the corporation] secured

in arbitration," we held that the action was barred as *res judicata.* 802 F.2d at 930.[5]

Because the judgments having preclusive effect in this case, namely the judgments of foreclosure and the deficiency judgments entered against the Rudells, were rendered by a state court, we may not automatically apply the reasoning of *Rudell* to reach our conclusion that the Henrys' RICO claims are barred by *res judicata.* However, the fact that the rendering court was an Illinois state, rather than a federal, court does not materially alter our analysis. Adopting the definition of *res judicata* set out by the Supreme Court in *Cromwell v. County of Sac,* 4 Otto 351, 94 U.S. 351, 24 L.Ed. 195 (1876), the Illinois courts have consistently held that the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties. *Lake v. Tomes,* 405 Ill. 295, 300–301, 90 N.E.2d 774, 777 (1950); *Leitch v. Hine,* 393 Ill. 211, 220, 66 N.E.2d 90, 95 (1946); *Bacon v. Reichelt,* 272 Ill. 90, 93–94, 111 N.E. 565, 566 (1916); *Harvey v. Aurora & Geneva Ry. Co.,* 186 Ill. 283, 294, 57 N.E. 857, 861 (1900); *Neff v. Smyth,* 111 Ill. 100, 110 (1884). A defendant therefore may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment. *Bernard Bros., Inc. v. Deibler,* 344 Ill.App. 222, 230, 100 N.E.2d 512, 516 (2d Dist.1951). Just as the policies behind the doctrine of *res judicata* are designed to discourage the piecemeal litigation of claims, so are they designed to prevent the piecemeal presentation of defenses. *Id.*

In *LaSalle Nat'l Bank v. County Bd. of School Trustees,* 61 Ill.2d 524, 337 N.E.2d 19 (1975), certiorari denied, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976), the Illinois Supreme Court more recently reconsidered the preclusive effect of a party's failure to raise a defense in a prior action. The court held that a party may not attack a final judgment in a collateral proceeding by bringing a claim that would have constituted a potential defense or counterclaim in the prior action. The preclusive judgments at issue in *LaSalle* were condemnation judgments entered in eminent domain proceedings which awarded compensation to the prior owners and vested title in fee simple in the condemnors. The condemnation judgments were based on a stipulation between the parties and were not appealed. When the condemnors later attempted to sell the land, the prior owners filed suits in circuit court seeking to restrain the sales, alleging that they had retained a reversionary interest in the property. The Illinois Supreme Court held that the character of the estate acquired by the condemnors was determinatively resolved in the condemnation proceedings and that the subsequent action was barred by *res judicata.*

The *LaSalle* court noted that the prior owners had the opportunity in the eminent domain action to argue that the condemnors would take less than a fee simple estate, but did not and furthermore failed to take a direct appeal from the final condemnation judgments. Hence they were barred from attacking the judgments in a collateral proceeding by litigating "the question they could have had decided in the original proceedings." 61 Ill.2d at 531, 337 N.E.2d at 23. Citing *Harvey v. Aurora & Geneva Ry. Co.,* 186 Ill. at 294, 57 N.E. at 861, the court concluded:

> a consent judgment whereby the franchisee was required to divest itself of a business which was allegedly in violation of the agreement. Finding that the franchisee could have raised the antitrust claim as a defense to the imposition of the consent judgment but failed to do so, we held that the antitrust claim was barred because it was in essence a direct attack upon the rights established by the earlier consent judgment. 598 F.2d at 1085.

5. In *Martino v. McDonald's System, Inc.,* 598 F.2d 1079 (7th Cir.1979), certiorari denied, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379, we similarly held that a federal antitrust claim brought by a franchisee against the franchisor was barred as *res judicata* by an earlier action brought by the franchisor against the franchisee, alleging that the franchisee had violated a restrictive covenant in the franchise agreement. The earlier action had been resolved by

The previous decisions of the court ... settled every question which might have been raised and every objection which might have been made, whether then raised and made or not. The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter which might have been raised and determined in it.

61 Ill.2d at 529–530, 337 N.E.2d at 22.

This Court has also had an opportunity to determine whether Illinois preclusion law bars a party from raising a claim in a subsequent proceeding that would have constituted a defense or counterclaim in a prior action if the successful prosecution of the later claim would nullify rights established by the prior action. In *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982), the plaintiff police officer was discharged by the Board of Fire and Police Commissioners after he had allegedly given false testimony before the Board. The officer's only defense was that his testimony was true. The officer sought administrative review of the Board's order in Illinois state court where he alleged, but offered no proof, that his discharge had been racially motivated. The state court upheld the Board's decision, and the officer did not appeal. The officer later filed a civil rights claim in federal district court charging that his discharge constituted unlawful discrimination. The district court dismissed the suit, finding it "clearly barred by well-established principles of res judicata." *Id.* at 198.

Noting that the issue of discriminatory motive would have been a complete defense to the discharge proceeding, we held on appeal that the officer's failure to raise the defense before either the Board or the state court barred him from subsequently asserting the civil rights claim based on the same facts. If the officer were successful in establishing that he was discharged based on race, and were awarded lost wages and reinstated, it would "directly undermine the validity of the state decisions and the city's right to discharge [the officer] which the decisions established." 685 F.2d at 201. As a consequence, we concluded that the plaintiff should not be afforded "yet another opportunity to attack the validity of his discharge." *Id.;* see also *Jennings v. Caddo Parish School Bd.*, 531 F.2d 1331 (5th Cir.), certiorari denied, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976) (state court judgment affirming school board's dismissal of teacher bars subsequent § 1983 suit in federal district court alleging that dismissal was racially motivated).

■ We find that our holding in the instant case is controlled by the decisions discussed above.[6] At no time during the course of the state court mortgage foreclosure proceedings did the Henrys ever suggest that the second mortgage was a forgery or procured through fraud or that the underlying debt of $345,000 was unlawful. The Henrys raised a number of issues in their motion to vacate the judgments in the circuit court and on appeal to the Illinois appellate court, but fraud and forgery were not among them. To allow the Henrys now to raise their fraud claims to challenge the validity of the second mortgage and thereby establish a RICO violation would clearly undermine the judgments of foreclosure entered against the Henrys by the Illinois circuit court and affirmed on appeal.

■ An examination of the amended complaint reveals that the Henrys are seeking to relitigate a claim, namely the validity of the second mortgage, which has already been definitively resolved. The Henrys' allegations of fraud and forgery, if substantiated, would have been a complete defense to the foreclosure proceedings. *Dunlap v. Peirce*, 336 Ill. 178, 168 N.E. 277 (1929). Having failed to raise those allegations before the state court, the Henrys cannot

6. The doctrine of *res judicata* operates to bar the RICO claims against all of the defendants. Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of *res judicata.* See *Martino*, 598 F.2d at 1083 n. 7.

attack the state court judgments by subsequently filing RICO claims based on the same facts in federal court. Furthermore, if the Henrys were to recover the damages they seek, the deficiency judgments awarded Farmer City State Bank would be rendered meaningless. Even more troublesome, the Henrys seek to have the second mortgage and the promissory note evidencing the underlying $345,000 debt cancelled and their enforcement and collection enjoined, despite the fact that the encumbered property was sold to the Bank at a foreclosure sale on November 28, 1983, directly pursuant to the foreclosure judgments entered by the Illinois circuit court. Because the Henrys' RICO claims could impair the rights established in the state court mortgage foreclosure proceedings, we hold that they are barred by the doctrine of *res judicata.*

Our result is unaffected by the fact that the Henrys may not have been able to bring their RICO claims in the state court proceedings. No federal Court of Appeals has considered whether jurisdiction over RICO claims is exclusively federal. See *County of Cook v. Midcon Corp.*, 773 F.2d 892, 905 n. 4 (7th Cir.1985) (suggesting, but not holding, that jurisdiction is concurrent); *Karel v. Kroner*, 635 F.Supp. 725 (N.D.Ill. 1986) (holding that state courts have concurrent jurisdiction over RICO claims and that plaintiff's federal RICO claim was barred by *res judicata* since he failed to bring his RICO claim along with his state fraud claims in prior state court action). Even assuming, however, that the federal courts have exclusive jurisdiction over RICO claims, the Henrys were still required to raise their allegations of fraud

and forgery, which form the sole basis for their RICO claims, as a defense to the mortgage foreclosures. In *Rudell*, we specifically noted that the Rudells were foreclosed from raising their RICO claim in federal court because they had failed to raise their allegations of fraud as a defense to the enforcement of the franchise agreement in the arbitration proceedings, even though they may not have been able to bring the RICO claim itself before the arbitrator. 802 F.2d at 931–932 and n. 5; cf. *County of Cook v. Midcon*, 773 F.2d 892 (state collateral estoppel principles may bar relitigation of issues essential to a RICO claim even if federal courts have exclusive jurisdiction over such claims). To hold otherwise and allow the Henrys to bring their RICO claim now would completely undermine the Bank's judgments of foreclosure, which necessarily determined the validity of the underlying mortgage. *Rudell*, 802 F.2d at 931–932.

Had the Henrys raised their fraud and forgery defenses in the state court and prevailed, they then would have been free to bring their RICO claims, based on the same facts underlying the successful defense, in the district court.[7] *Rudell*, 802 F.2d at 931. Indeed, it is likely that the Farmer City State Bank and all those defendants in privity with it would have been barred by the doctrine of collateral estoppel from relitigating the facts underpinning the RICO violation. See *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *County of Cook v. Midcon*, 773 F.2d 892.

---

**7.** Similarly, as long as the Henrys had raised their fraud and forgery defenses in the mortgage foreclosure proceedings and prevailed, they would not have been required to assert a counterclaim for damages at the same time if to do so would have been inconvenient or strategically inadvisable. Although they would certainly have been permitted to bring a counterclaim in the same proceeding, they would not have been barred from brining it later if they preferred to wait until they could determine the total amount of compensatory damages to which they were entitled. See *Miller v. Bank of*

*Pecatonica*, 83 Ill.App.3d 424, 38 Ill.Dec. 658, 403 N.E.2d 1262 (2d Dist.1980). Furthermore, a defendant's failure to raise a counterclaim in a prior action will not bar him from asserting that claim in a subsequent action if either the parties to or the issues presented by the counterclaim in the subsequent action are entirely different from those in the prior action. See, *e.g., Spiller v. Continental Tube Co.*, 95 Ill.2d 423, 69 Ill.Dec. 399, 447 N.E.2d 834 (1983); *Kennedy v. First Nat'l Bank of Decatur*, 129 Ill.App.3d 633, 85 Ill.Dec. 236, 473 N.E.2d 604 (4th Dist.1985).

The Henrys were given a full and fair opportunity to litigate their fraud and forgery defenses in a procedurally adequate forum. See *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–481, 102 S.Ct. 1883, 1896–1898, 72 L.Ed.2d 262 (1982); *Lee*, 685 F.2d at 201–202. They failed to raise those defenses at the proper time, and hence cannot be allowed to mount a collateral attack on otherwise valid and final state court judgments and the rights established therein by subsequently raising those defenses in the disguise of civil RICO claims in federal court. This Court has recently commented on the expansiveness of civil RICO. See *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973–974 (7th Cir. 1986). While we may be unable to limit the statutory scope of the civil RICO provisions, civil RICO should not be used as a vehicle for circumventing well-established principles of *res judicata* and the important policies they promote.

### III. *The Section 1983 Claims*

In addition to the RICO claims against the Bank defendants, the amended complaint also alleges § 1983 claims against the City of Farmer City, its Chief of Police, and the Sheriff and State's Attorney of DeWitt County arising out of their actions in executing the foreclosure judgments. We affirm the district court's dismissal of the § 1983 claims against all of the defendants for failure to state a claim.

### A. *The City of Farmer City*

█ The § 1983 claim against the City of Farmer City alleges that the municipality through its agent Terry Scott, the Chief of Police, aided and abetted the Bank in confiscating the Henrys' business property "without any writ, warrant, or Court Order."

To the extent that the Henrys seek to impose liability on the City for the alleged unconstitutional acts of its employee Scott, their claim must fail. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court expressly rejected municipal liability based on *respondeat superior*. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original).

To the extent that the Henrys seek to impose liability under § 1983 on the City in its own right, they must prove that the constitutional deprivation was caused by an official municipal policy or custom, *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell*, 436 U.S. at 690–691, 694, 98 S.Ct. at 2035–2036, 2037. To establish a municipal policy or custom, the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which the plaintiff suffered a deprivation will not suffice. *Hossman v. Blunk*, 784 F.2d 793, 796–797 (7th Cir. 1986); *Strauss v. City of Chicago*, 760 F.2d 765, 767–769 (7th Cir.1985). The amended complaint alleges only one unconstitutional act committed by the City and fails to include even a general allegation that this act was in furtherance of an official municipal policy or custom. The § 1983 claim against the City was properly dismissed.

### B. *The Individual Defendants*

The amended complaint fails to specify whether the § 1983 claims against the Chief of Police (Terry Scott), the State's Attorney (Stephen Peters), and the Sheriff (Donald Massey) were intended to be official-capacity suits or personal-capacity suits. Although this distinction is often overlooked by plaintiffs in drafting their complaints, it is one which carries significant import.

█ A § 1983 suit against a government official in his personal or individual capacity for actions taken under color of state law seeks to impose personal liability on the official, and any award of damages may be executed only against the official's personal assets. As such the official in a

1238

personal-capacity suit may raise the applicable personal immunity defenses. A § 1983 suit against a government official in his official capacity for actions taken under color of state law is treated as a suit against the governmental entity. Any damage award may be satisfied by looking only to the entity itself, not the official, and the official may not assert any personal immunity defenses. See *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105–3106, 87 L.Ed.2d 114 (1985); *Brunken v. Lance*, 799 F.2d 337, 340–341 (7th Cir. 1986).

■ Because an official-capacity suit is treated as a suit against the governmental entity, "[d]amages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983); see also *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986); *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. If the claims against the individual § 1983 defendants were meant to be official-capacity suits, they were properly dismissed. As we concluded above, the amended complaint fails to state a cause of action under § 1983 against the City of Farmer City.

■ Because the § 1983 suits might have been intended as personal-capacity suits, we must briefly review the claims against each of the three individual defendants. The § 1983 claim against State's Attorney Peters alleges that he "falsely, maliciously, and without any probable or reasonable cause" filed a petition for adjudication of civil contempt in connection with the Henrys' failure to comply with the Illinois circuit court's order of levy on their personal property to satisfy a judgment of confession on the $60,000 note. The amended complaint further alleges that Peters was at all times acting under color of state law as the State's Attorney of DeWitt County. The § 1983 claim against State's Attorney Peters was properly dismissed because as the Supreme Court held in *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), a prosecutor enjoys absolute immunity from civil suit under § 1983 for damages "in initiating a prosecution and in presenting the State's case." This immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.

■ The § 1983 claim against Sheriff Massey alleges that he wrongfully entered the Henrys' home, seized their non-exempt personal property and later sold that property at a public auction, all pursuant to an Illinois circuit court order directing the Sheriff to enforce a judgment by confession entered by the court on the $60,000 promissory note. The claim further alleges that he "falsely, maliciously, and without any probable or reasonable cause" charged the Henrys with contempt of court in connection with their refusal to comply with the order. The district court properly dismissed the claim against Sheriff Massey on the ground that he was entitled to quasi-judicial immunity from suit for damages under § 1983.

Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct. *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980). Although immunity is normally extended to those performing discretionary and not ministerial acts, "those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings have quasi-judicial immunity." *Id.* at 477 n. 4; see *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir.1975) (official entitled to absolute immunity afforded judge if "he is performing a ministerial function at the direction of the judge"); *Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir.1974) (quasi-judicial absolute immunity extended to police and other court officers "for purely ministerial acts where they do nothing other than perform orders issuing from a court").

Sheriff Massey was at all times acting pursuant to an official court order to enforce a validly entered judgment when he performed the allegedly wrongful acts of

which the Henrys now complain. It is difficult to think of a task more intimately related to a judicial proceeding than that of enforcing a money judgment entered by a court. Because the Sheriff was acting in furtherance of his "official duties in aid of the court," *id.* at 477, he is entitled to quasi-judicial absolute immunity from suit for damages arising from those acts.

The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution. See *Ashbrook,* 617 F.2d at 477. The Henrys did indeed appeal the court order directing the Sheriff to levy on their non-exempt personal property to satisfy the judgment entered by the circuit court. *Farmer City State Bank v. Henry,* 138 Ill.App.3d 854, 93 Ill.Dec. 196, 486 N.E.2d 297 (4th Dist.1985). To allow the Henrys to attack the order collaterally by bringing a § 1983 suit against the Sheriff for damages would require sheriffs and other court officers who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them. Such a result is obviously untenable.

The § 1983 claim against Chief of Police Scott alleges that he aided and abetted the Bank in confiscating the Henrys' business property without "writ, warrant, or Court Order." Contrary to the Henrys' allegations, however, the district court found in its December 10, 1985, order dismissing the § 1983 claim against Chief Scott that he was in fact acting pursuant to an April 29, 1982, order of the Illinois circuit court directing him to put the Henrys' business property in the exclusive possession of the Farmer City State Bank.

 As discussed above with respect to Sheriff Massey, police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages. See, *e.g., Tymiak v.*

*Omodt,* 676 F.2d 306, 308 (8th Cir.1982) (sheriff acting pursuant to state court order immune from § 1983 suit for damages); *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks entitled to absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at judge's direction); *Slotnick v. Garfinkle,* 632 F.2d 163, 166 (1st Cir.1980) (sheriff protected by immunity of judges under whose orders he acted); *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir.1976) (receiver who faithfully and carefully carries out orders of judge shares judge's absolute immunity to prevent receiver from becoming a lightning rod for harassing litigation aimed at judicial orders); *Hazo v. Geltz,* 537 F.2d 747, 750 (3d Cir.1976) (official acting under direct order of court entitled to absolute immunity); *Lockhardt v. Hoenstine,* 411 F.2d 455, 460 (3d Cir.), certiorari denied, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (public official acting pursuant to court directive is immune from suit); *Shipley v. First Fed. Sav. & Loan Ass'n,* 619 F.Supp. 421, 439 (D.Del.1985) (sheriffs enjoy immunity when they act in either ministerial capacity or pursuant to order of judge); *Dick v. Watonwan County,* 551 F.Supp. 983, 990–991 (D.Minn.1982) (county sheriff immune from suit arising out of his execution of commitment orders where orders were valid on their face and he acted in good faith); *Meyer v. Curran,* 397 F.Supp. 512, 519 (E.D. Pa.1975) (sheriff who seized plaintiffs' property pursuant to writ of execution issued by state court is immune from suit for damages). Under the circumstances presented here, quasi-judicial absolute immunity properly extends to all of Chief Scott's actions in executing the facially valid court order.

Again, if the Henrys had wished to challenge the validity of the court order directing Chief Scott to place the premises in the possession of the Bank, they should have appealed that order. Although the Henrys did appeal both the foreclosure and personal deficiency judgments ultimately entered

by the circuit court, the Illinois appellate court opinion reveals that the Henrys did not challenge the order divesting them of possession of the property, nor did they challenge the provisions of the Illinois mortgage foreclosure statute, Ill.Rev.Stat. ch. 110, ¶ 15–301 *et seq.*, which authorized the court to issue the order. *Farmer City State Bank v. Champaign National Bank*, 138 Ill.App.3d 847, 93 Ill.Dec. 200, 486 N.E.2d 301 (4th Dist.1985). Having remained silent on direct appeal, the Henrys cannot collaterally attack the order over three years after it was issued by suing the sheriff who executed it in federal court under § 1983.

## IV. *The Order Enjoining Prosecution of the Pending State Court Action*

While their appeal of the district court's dismissal of their amended complaint was pending, the Henrys filed a suit in Illinois state court against the Bank and seven other federal court defendants. The facts underlying the state court suit were the same as those underlying the federal court suit, but the state court complaint alleged common law fraud, conspiracy, trespass, and legal malpractice causes of action. On February 13, 1986, the state court defendants filed a motion with the federal district court seeking to enjoin the state court proceeding, arguing that it was barred as *res judicata* by the federal court action. On March 10, 1986, the district court granted the defendants' motion and issued an order enjoining the Illinois circuit court from proceeding further with the Henrys' pending suit, directing the Henrys to file a motion with the circuit court to dismiss their suit, and prohibiting the Henrys from filing additional suits against any of the federal court defendants based on the same facts presented by the federal court litigation.

■ Although we sympathize with the defendants' frustration in having to continue to defend themselves against litigation which at this point appears to be without merit, the district court's grant of the injunction must be set aside for want of

jurisdiction to enter the order. The Henrys filed their notice of appeal on December 27, 1985, and a supplemental notice of appeal on January 21, 1986. The filing of a timely notice of appeal confers jurisdiction over the matter on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *Asher v. Harrington*, 461 F.2d 890, 895 (7th Cir. 1972); *Nicol v. Gulf Fleet Supply Vessels*, 743 F.2d 298, 299 (5th Cir.1984). If an appeal is taken from a judgment which determines the entire action, upon the filing of the notice of appeal the district court loses its power to take any further action in the proceeding except in aid of the appeal, to correct clerical mistakes under Fed. R.Civ.P. 60(a), or in aid of execution of a judgment that has not been stayed or superseded. 9 Moore's Federal Practice ¶ 203.11, at 3–44 to 3–46. Further proceedings in the district court cannot take place without leave of the court of appeals. *Asher*, 461 F.2d at 895.

■ Because the district court was divested of its jurisdiction over the entire action at the very latest on January 21, 1986, when the Henrys filed their supplemental notice of appeal, it had no power to issue the order granting the defendants' request on March 10, 1986. The district court relied on *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th Cir.1983), certiorari denied, 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984), for the proposition that a district court retains jurisdiction to enjoin relitigation of the facts of a case even when there is an appeal pending. As the defendants concede in their brief, however, the Ninth Circuit never mentioned that the notice of appeal had been filed before the district court entered the injunction. Moreover, the appellants in *Wood* had filed the notice of appeal while their Fed.R.Civ.P. 59 motion to alter or amend the judgment was still pending. A notice of appeal is ineffective if it is filed while a timely Rule 59

motion is still pending. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. at 61, 103 S.Ct. at 403; Fed.R.App.P. 4(a)(4); 16 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3950 (Supp. 1986). Because the notice of appeal in *Wood* was ineffective, it did not divest the district court of its jurisdiction over the action and it therefore had the power to issue the injunction.

The district court here contended that by enjoining the Illinois circuit court from relitigating the facts of the instant case, it was acting " 'to aid the appeal,' by the necessity of protecting and effectuating our judgment pursuant to the Anti-Injunction Act (28 U.S.C. § 2283)." *Henry v. Farmer City State Bank*, 630 F.Supp. 844, 846 (C.D.Ill.1986). The Supreme Court in *Griggs* emphasized, however, that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." 459 U.S. at 58, 103 S.Ct. at 402. This case illustrates the potential danger of their attempting to do so.

In issuing its injunction, the district court naturally assumed that its rulings would be upheld on appeal. At the time that the notice of appeal was filed, however, it was possible that the district court would be reversed. Had we reversed the dismissal of the amended complaint, the district court would then have been in the unenviable position of having issued an injunction to protect and effectuate a judgment reversed on appeal. It is precisely such conflicting rulings that the rule transferring jurisdiction from the district to the appellate court upon the filing of a notice of appeal is designed to prevent.

Our holding does not mean that the state court defendants were left without recourse in the federal courts. The defendants should have filed their motion for an injunction with this Court.[8] We then could have considered the motion with the appeal or, if a quicker resolution was required, remanded the case to the district court directing it to rule on the motion. Because the district court failed to seek leave of this Court before it proceeded, it was without jurisdiction to grant the defendants any relief after January 21, 1986.

## V. *Conclusion*

The § 1983 defendants have requested that we assess fees and costs against the plaintiffs pursuant to Fed.R.App.P. 38. We ordinarily do not grant such requests. *Margoles v. Johns*, 798 F.2d 1069, 1075 (7th Cir.1986). For an appeal to be frivolous within the meaning of Rule 38, the result must be obvious or the appellant's argument must be wholly without merit. *Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 184 (7th Cir. 1985). Furthermore, for an award of sanctions to be justified, there must be "some indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983). Although we do not dispute that the § 1983 claims were indeed weak, we do not believe that they were entirely groundless or that the Henrys' arguments were wholly without merit so as to warrant Rule 38 sanctions. Therefore defendants' request for fees and costs is denied.

For the reasons stated above, the district court's dismissal of the amended complaint is affirmed, but the order enjoining the pending state court action is reversed for

---

**8.** By indicating that the defendants should have filed their motion for injunction with this Court, we express no opinion as to whether we would have granted the injunction based on the facts presented here. Furthermore, if the plaintiffs attempt to reinstate their state court action, the defendants may refile their motion for injunction with the district court, which will again have jurisdiction over the case after our decision is final. It would appear to be far simpler, however, for the defendants to dispose of the case by raising the defense of *res judicata* before the state court since our discussion in Part II *supra* would seem to indicate that the subsequent state court action is also barred under Illinois preclusion law by the earlier mortgage foreclosure proceedings.

lack of jurisdiction, each side to bear its own costs.