JERRY MILLER, Plaintiff-Appellee, *v.* THE BANK OF PECATONICA *et al.*, Defendants-Appellants.

Second District    No. 79-178

Opinion filed April 25, 1980.

William E. Schirger, of Schirmer, Schirger, Graff & Beger, of Freeport, for appellants.

Stephen G. Balsley, of Barrick, Jackson, Switzer, Long & Balsley, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The Bank of Pecatonica (hereinafter the Bank) and its president, Lawrence E. McKee, appeal from the verdict of the jury awarding the plaintiff, Jerry Miller, $1,618 as actual damages and $3,500 as punitive damages arising from the wrongful replevin of Miller's property.

Jerry Miller was a customer of the Bank. He had a note at the Bank due January 15, 1976, and when he came in to renew it, McKee prepared a new note on a form which had a security agreement incorporated into it which when properly completed would give the "secured party" a security interest in all "the following described property." There was no described property set forth either on the front or the back of the document in question, and Miller testified that he did not intend to and was not asked to execute a security agreement and he did not give McKee a lien on his property, but only intended to renew the present note. However, McKee at the time the note was renewed asked Miller to bring in a list of his equipment. (Miller was in the landscaping business and owned various pieces of equipment which he used in his business.) Accordingly, Miller brought in a list of his equipment which, Miller testified, McKee said he wanted "so that he would have a record for his

files." McKee then copied the list on to a form he described as a financial statement. McKee had the note xeroxed and gave a copy to Miller and Miller signed the note and left. That afternoon, after Miller had left the Bank, McKee had his secretary type the items on the list of equipment constituting the financial statement which Miller had brought in, on to the back of the note and security agreement, thus completing the security agreement and indicating thereon that Miller had given a lien to the Bank on his equipment by way of security. Miller testified that he was not aware of the fact that the list of his equipment had been incorporated into the security agreement, since his copy of the note did not have the equipment listed on the back of it as did the original.

During 1976 Miller experienced business difficulties and in July of 1976 he defaulted on the note, which was payable in monthly installments. In September 1976 the Bank filed suit and on the basis of alleged security agreement sought a writ of replevin for the equipment described on the back of the Bank's copy of the security agreement. Upon the writ being issued, the sheriff seized the equipment listed thereon. At the hearing on the writ of replevin, McKee testified that the security agreement had been altered after Miller had signed it. The writ was then dismissed and the court ordered the property which had been seized pursuant to the writ returned to Miller. The Bank, however, did not return the property and Miller, after some delay, and at some expense, recovered it by his own efforts. The Bank then secured a judgment against Miller on the defaulted note, and Miller paid the judgment and discharged the debt.

Thereafter, in January 1977 Miller filed the present suit against the Bank and McKee seeking compensatory damages for loss of profits that he was deprived of through unavailability of his equipment and punitive damages for the wrongful action of the defendants in procuring a writ of replevin and taking possession of his property pursuant to a spurious security agreement.

In this appeal the defendants contend: (1) that the plaintiff is barred by the doctrine of *res judicata* from maintaining the present suit as a separate cause of action since he could have raised the same issues by way of counterclaim in the hearing on the replevin suit and (2) that there was not sufficient evidence to sustain the verdict against Lawrence McKee, individually, for punitive damages.

As to the first contention, the defendants point out that section 38(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 38(1)) provides that:

> "Subject to rules, any demand by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of set-off, recoupment, cross demand or

otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross demand in any action, and when so pleaded shall be called a counterclaim."

■■■ We are of the opinion, however, that while this section is designed to simplify the litigation between parties by providing that all issues can be tried in one forum at the same time, it does not require a defendant to immediately assert his rights by way of counterclaim if it would be inconvenient or strategically inadvisable for him to do so. The word "may" in the quoted words of the statute indicate an election is available to the defendant and the cases have so interpreted this section. (*Stoner v. Stoner* (1953), 351 Ill. App. 304.) In the case before us, Miller points out that he was, in the replevin action, chiefly concerned with getting his equipment back as soon as possible since his livelihood depended on it, rather than in asserting a claim in his own behalf, and he therefor concentrated on that concern to the exclusion of other considerations. Nor, he contends, was he prepared at the replevin hearing to assert a counterclaim, because he was not aware at that time of either the extent of damages, if any, to his equipment while in the sheriff's hands or of the indirect consequences and the damages resulting from work loss because his equipment was unavailable. Moreover, if Miller had sued on the replevin bond, as he might have done, under sections 10 and 25 of "An Act to revise the law in relation to replevin" (Ill. Rev. Stat. 1977, ch. 119, pars. 10, 25), he could not have recovered punitive damages against McKee since that act does not encompass such an action in a suit on a replevin bond. See *Larson v. Mobile Home Finance Co.* (1967), 83 Ill. App. 2d 210.

The defendants contend, however, that under the broad language of the cases considering the question of *res judicata*, the plaintiff is barred from asserting his counterclaim if he failed to assert it when he had an opportunity to do so and refer us to the language found in *National Tea Co. v. Confection Specialties* (1977), 48 Ill. App. 3d 650, 654, as follows:

"Once a court of competent jurisdiction has determined a cause of action on the merits, except for a direct attack on appeal, that judgment is a bar to any subsequent cause of action between the same parties, or their privies, which was or might have been litigated in the earlier proceedings. (*Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 186 N.E. 152.)"

■■ It is our opinion, however, that the case before us does not come within the doctrine of *res judicata* as exemplified by *Harding*. Historically, the doctrine of *res judicata* requires that in both cases there be three identical elements—the cause of action, the subject matter and the parties, or those privy to them. (*Boddiker v. McPartlin* (1942), 379 Ill. 567.) Here neither the parties nor the issues are identical in the two cases.

The replevin suit involved the right of possession to the property as security for the debt. The present suit is not an identical suit by the plaintiff, as were the cases cited by the defendant here, but is a suit by the original defendant and involves a person—McKee—not a party to the replevin action—and an issue not raised or contemplated in a replevin action—willful and wanton conduct by McKee in altering the promissory note to purportedly include a security agreement. There is some authority to the effect that the requirements of *identical parties* is satisfied if the party against whom collateral estoppel is invoked is identical in both cases. (*Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272.) Here, however, not only was there a different party in the second case but the issues were entirely different, the second suit involving not the right to possession under a security agreement, as in the replevin action, but a question of both compensatory and punitive damages as to which a party not involved in the first suit was a defendant and an essential witness. We think, therefore, that the policy considerations behind the doctrine of *res judicata* are not applicable here.

■ The defendant McKee contends also that the verdict against him for punitive damages is not supported by the evidence. He refers to the familiar doctrine that punitive damages are not a favorite of the law and will be awarded only for willful, wanton or malicious conduct and asserts that "exemplary damages are not recoverable against a defendant who acts in good faith under color of law." The defendant points out that the plaintiff's property was seized under a "validly signed Writ of Replevin issued by the Clerk of the Circuit Court pursuant to an Order entered by presiding Judge Smith." This is obviously true, but it does not establish the defendant's good faith in procuring the writ in the first place. Color of law is only the semblance of legal right, and where the person asserting a right under color of law himself created or contrived the specious instrument under which color of law is asserted, he does not act in good faith, and a claim under "color of law" is meaningless. This argument is therefore without merit.

■ The defendant also complains about the trial court's granting of a motion *in limine* to preclude any argument by the defendants that the Bank had a valid security agreement. The judge at the hearing on the writ of replevin found the security agreement not valid and ordered that the seized equipment be returned to the defendant in that action. The trial court in the case before us refused to listen to the defendants' argument that they had a valid writ under color of law. Since McKee admitted he had filled in the security agreement portion of the note with the list of Miller's equipment after the note was signed and without Miller's knowledge, the previous court had ruled that no valid lien was acquired thereby and the seized property should be returned to Miller. The trial

court's ruling in the present case which precluded the defendant from arguing that he had a sufficient writ or replevin under "color of law" to legally justify his seizure of Miller's property, seems a logical result of the preceding action. Otherwise, the defendant would be able to argue his own wrong to establish that by his wrong acts he had acquired such "color of law" as would excuse the wrongful replevin. The trial court's ruling merely recognized that the argument was foreclosed by the previous trial when it was admitted that McKee, as the Bank's president, had altered the promissory note himself. On this issue—the validity of the writ of replevin—which is the same in both cases, there is a collateral estoppel. (*Turn Verein Lincoln v. Paschen* (1960), 20 Ill. 2d 229; *Oak Park Club v. Brenza* (1955), 7 Ill. 2d 389.) While we recognize that a writ of replevin might be illegally issued in good faith and give the plaintiff therein a good defense based on color of law in a later action for punitive damages, good faith was not established in this case, and the admissions of the defendants are contrary to a "color of law" theory. Under the circumstances, we see no error in granting the plaintiff's motion *in limine*.

The judgment of the circuit court of Stephenson County is affirmed.

Judgment affirmed.

WOODWARD and VAN DEUSEN, JJ., concur.