Donald E. HUNZIKER and Joan E. Hunziker, Plaintiffs,

v.

GERMAN–AMERICAN STATE BANK, et al., Defendants.

No. 87 C 20215.

United States District Court, N.D. Illinois, W.D.

Oct. 3, 1988.

**1008**

Donald E. Hunziker, Freeport, Ill., in pro. per.

Joan Hunziker, Freeport, Ill., in pro. per.

Richard R. Haldeman, Michael K. Havrilesko, Williams & McCarthy, Rockford, Ill., for Peter McClanathan, Schmelzle & Kroeger Law Offices, and W.L. Kroeger.

Michael F. O'Brien, Clark, McGreevy & Johnson, Rockford, Ill., for German–American Bank, James Schneiderman, Jeff Sibley, James Butler, Glenn Borneman, Bill (Guy) Lomax, Ted Long, Vail Nortridge, and Marsden Wilhelms.

John A. Ward, Atty. Gen. of Ill., Chicago, Ill., for Francis X. Mahoney.

Stephen E. Ford, Mark S. Vilimek, Jo M. Bonell, Patti Deuel, Kiesler & Berman, Chicago, Ill., for Oefelein, Rundall, Clark, and Roberts.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The case before this federal Court arises from plaintiffs' dissatisfaction with the Illinois law governing the ex parte issuance of writs of replevin and the manner in which a state court applied this law to plaintiffs' farm property. The pro se plaintiffs, a couple from Stephenson County, Illinois, have sued the state Circuit Judge who issued the writ; the sheriff and deputies who executed it; the bank that sought its issuance and several of its officers, directors and employees; and the bank's lawyers. The defendant judge has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and the remaining defendants have filed motions for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiffs have filed a cross-motion for summary judgment, consideration of which the Court postponed pending decision on defendants' motions. For the reasons detailed in the following opinion, the Court grants all of the defendants' motions and consequently denies plaintiffs' cross-motion for summary judgment.

### Introduction

The Court's decision is best understood in light of the full procedural history of this case. Plaintiffs Donald and Joan Hunziker were hog farmers residing in Stephenson County, Illinois. The German–American State Bank, an Illinois-chartered institution located in German Valley, Illinois, lent them money to operate their farm. Contending that it held a perfected security interest in much of plaintiffs' property, that plaintiffs had defaulted on their obligations in the amount of approximately $290,000, and that plaintiffs were likely to conceal or otherwise dispose of the secured property, the bank persuaded Judge Francis X. Mahoney of the Fifteenth Judicial Circuit to issue a writ of replevin ex parte on April 10, 1985. The hearing was conducted without notice to plaintiffs pursuant to § 19–106 of the Illinois Code of Civil Procedure, Ill.Rev.Stat. ch. 110, ¶ 19–106 (1984). The court ordered the bank to post bond in the amount of $380,000, or approximately twice the estimated value of the assets covered by the security agreement, and scheduled an adversarial hearing for April 15.

On April 11, Stephenson County Sheriff Glenn Oefelein and three deputies served the writ of replevin on the Hunzikers. Subject to the writ were much of the Hunzikers' livestock, grain and feed, and farm equipment. On the day scheduled for the adversarial hearing before the state court, the Hunzikers filed a petition for removal with the United States District Court for the Northern District of Illinois, Western Division, in Rockford. The District Court denied the petition for failure to raise any federal question and had a copy of the order hand-delivered to the state court on

the same day. The Hunzikers appeared pro se at the scheduled hearing in the state court and requested a continuance to obtain counsel. Judge Mahoney granted the continuance and entered further orders permitting the bank to sell the Hunzikers' livestock, due to its perishable nature, and denying the bank permission to sell the replevied grain.

A protracted series of negotiations, hearings, motions and more negotiations ensued, during the course of which the Hunzikers' counsel was granted leave to withdraw. At some point, the Hunzikers, once again acting pro se, apparently reached an agreement with the bank to settle the case and filed a proposed settlement with the court on October 22. Nevertheless, the very next day the Hunzikers filed a motion objecting to judgment on the settlement they had proposed, contending that it violated several of their constitutional rights. That day, after questioning the Hunzikers about the proposed agreement in open court and determining that they had since reconsidered their objections, Judge Mahoney agreed to accept the proposed agreement as judgment in the case and set November 8, 1985, for entry of the final judgment order. On November 8, following further discussion in open court, Judge Mahoney entered judgment pursuant to the agreed terms. The essence of the consent judgment was that the bank would release the Hunzikers from personal liability for any deficiencies remaining on their outstanding debt after the sale of the replevied property; for their part, the Hunzikers agreed to the validity of the replevin and sale of their property and to release the bank from any further claims that they might assert against it as a result of the controversy.

To most minds, this judicially accepted compromise by the parties would have appeared to resolve the dispute once and for all. Instead, the Hunzikers shortly afterward began filing a series of motions pro se with the state court seeking to overturn the consent judgment.[1] Judge Mahoney denied these motions in a hearing on January 14, 1986, and the Hunzikers appealed to the Appellate Court of Illinois, Second District, which affirmed in an unpublished order and opinion issued May 7, 1987. *German–American State Bank v. Hunziker*, No. 2–86–0136 (Ill.App. 2d Dist. May 7, 1987) [154 Ill.App.3d 1161, 116 Ill.Dec. 661, 519 N.E.2d 729 (table)].[2] The Illinois Supreme Court apparently denied the Hunzikers leave to appeal,[3] and the Supreme Court of the United States denied their petition for writ of certiorari. *Hunziker v. German–American State Bank*, —— U.S. ——, 108 S.Ct. 1479, 99 L.Ed.2d 707 (1988).

---

1. The gist of these motions is set out in an unpublished opinion by the Appellate Court of Illinois, Second District. *German–American State Bank v. Hunziker*, No. 2–86–0136, slip op. at 7 (Ill.App., 2d Dist. May 7, 1987) [154 Ill. App.3d 1161, 116 Ill.Dec. 661, 519 N.E.2d 729 (Table)]:

    These included a motion for reconsideration based upon House Joint Resolution 192, alleging that the bank had no right to claim a debt against the defendants because of the abolition of the gold standard. Also filed were a motion for judicial clarification, a motion to correct errors in the transcript, a motion to strike paragraph seven of the settlement agreement [which released the bank from any claims by the Hunzikers], a motion for rehearing of the findings alleging that paragraph seven was not a valid addition to the settlement agreement and requesting that the settlement agreement be set aside, a motion to strike the settlement agreement and vacate the judgment, and a motion to strike the settlement agreement and award damages.

2. One of the Hunzikers' arguments was that the Circuit Court lacked jurisdiction of the matter because their attempt to remove the case to the District Court had never resulted in a proper remand to the Circuit Court. *Id.* at 7–8. The Appellate Court rejected this argument, noting that "[w]here a petition has been determined to be defective, removal has not taken place, and regardless of whether there is a remand order, the dismissal order serves to terminate the proceedings in the district court." *Id.* at 8. Upon disposing of the jurisdictional argument, the Appellate Court declined to consider the Hunzikers' contentions further, affirming the Circuit Court on the basis that a judgment entered by consent cannot be attacked on appeal by a party who had agreed to it. *Id.* at 9.

3. Or perhaps the Hunzikers never attempted an appeal to the state Supreme Court. The record before this Court on that point is unclear, but it is irrelevant to the Court's disposition of plaintiffs' case.

Before the Appellate Court had an opportunity to render its decision, however, the Hunzikers on April 10, 1987, filed suit pro se in this Court, alleging wholesale violations of their rights under the federal Constitution, federal statutes, and state common law.[4] They subsequently amended their complaint on April 21 to allege additional state statutory claims.[5] Named as defendants were Judge Mahoney; Sheriff Oefelein and three of his deputies; the German–American State Bank and various of its directors, officers and employees; and the lawyers who represented the bank in the replevin proceedings. Purporting to rely on 42 U.S.C. §§ 1983, 1985, 1986, 1988 and 28 U.S.C. § 2201; Fed.R.Civ.P. 60; and "Ancillary, Pendent Claim and Pendent Party Jurisdiction" over state causes of action, the Hunzikers sought $5 million in damages apiece and a declaration that the state court judgment in the replevin action is void.

Upon full briefing by the parties and for the reasons detailed below, the Court now grants defendant Mahoney's motion to dismiss with prejudice and the remaining defendants' motions for summary judgment, and denies plaintiffs' cross-motion for summary judgment.

## Plaintiffs' Request to Void State Court Judgment

■ In asking this Court to declare the state court judgment void,[6] plaintiffs betray a fundamental confusion about the powers of federal trial courts. Their plea

---

4. The Hunzikers' complaint is not a model of clarity, tending as it does to intersperse their theories for relief throughout a long (48 pages), contentious and often picturesque narrative of the facts underlying their case. A representative sample follows:

> The Hunzikers were quietly enjoying the pursuit of their chosen profession and occupation of farming, when without any notice and without an opportunity to be heard, the colorable operation of the law, with full apparent authority and weight of the State of Illinois by way of a replevin order, signed by a state judge who did not afford the Hunzikers with any right or opportunity of notice or opportunity to be heard, and acting without jurisdiction because of various improprieties in procedures, descended upon the Hunzikers' farming operation. The Hunzikers' quiet pastoral scene of rural Illinois was suddenly torn asunder as three deputies rolled upon their farm followed later by an army of trucks, trailers and people....

Complaint ¶¶ 5–6 (paragraphing deleted).

Thus, in the plaintiffs' initial paragraphs describing the facts, they asserted two of their principal grounds for relief: (1) the ex parte replevin proceedings, the execution of the writ, and the Illinois statute authorizing them failed to comply with the constitutional due process requirements of *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and its progeny; and (2) the state court judge lacked jurisdiction to act. While the jurisdictional argument at this point in the case before this Court was based only on the alleged failure to comply with state law requirements for jurisdiction, the plaintiffs later supplemented it with allegations that the state court lacked jurisdiction under federal law after their unsuccessful attempt to remove the case to federal court. This claim, however, came not in their complaint, but rather in one of their numerous memoranda in support of their case. *See* "Plaintiffs' Supplemental Resistance to All Defendants' Motions," at 5–8. *See also* Plaintiffs' Second Amendment to Complaint ¶ 3, which this Court did not permit to be made pending resolution of defendants' motions to dismiss and for summary judgment. As noted above, at n. 2, the Second District Appellate Court previously disposed of plaintiffs' federal jurisdictional argument. Plaintiffs' voluminous wordprocessed submissions to this Court are a cornucopia brimming with alleged violations of the federal Constitution, laws and Declaration of Independence, state statutes and common law, and even the natural law. *See* Complaint ¶ 8 ("The Constitution of the United States of America, Declaration of Independence and all the rights of free men that had evolved through centuries were ignominiously ignored and thrown aside under the purported exercise of a statute of the State of Illinois, void on its face, or through its antecedents...."). Since this Court does not reach the merits of plaintiffs' allegations, it will not attempt to detail them further.

5. The plaintiffs' amendment merely alleged further grounds for relief under Illinois law. As noted above, n. 4, the Court does not reach the merits of the complaint.

6. Plaintiffs rely upon 28 U.S.C. § 2201 and Fed. R.Civ.P. 60 in making this request. The Court observes that Rule 60 most likely can be used only to relieve parties from federal judgments. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2868, at 245 (1973 & Supp. 1987) ("[T]he majority of the cases hold that the federal courts cannot enjoin the enforcement of state judgments and there are sound considerations of policy supporting this result.") (footnotes omitted).

in this regard amounts to a demand for the Court to sit in appellate review of the state courts that have passed on the matter previously. Such review, of course, is clearly beyond the power of this Court. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983). *See also Andersen v. Roszkowski,* 681 F.Supp. 1284, 1292 (N.D.Ill.1988). Plaintiffs' sole federal remedy in such cases is to seek review by the Supreme Court of the United States. 28 U.S.C. § 1257. Since the Supreme Court has refused to consider plaintiffs' case, federal appellate review is at an end. The Court now turns to their claims for money damages.

### Plaintiffs' Claims for Damages

Plaintiffs have asserted claims for damages under 42 U.S.C. §§ 1983, 1985 and 1986, as well as assertedly ancillary or pendent state common law and statutory claims. They also have requested an award of attorneys fees under 42 U.S.C. § 1988. As a preliminary matter, the Court observes that plaintiffs have failed to state a claim under 42 U.S.C. § 1985 and, derivatively, § 1986.[7]

The Supreme Court has held that a cause of action under § 1985(3) requires at a minimum that plaintiff prove the deprivation of rights as a result of a conspiracy with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In a subsequent decision, the Court strongly in-

dicated that § 1985(3) was directed only at racially motivated conspiracies, but left open the question whether it might apply to other class-based discrimination. *United ed Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 836–37, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). The Court did hold, however, that § 1985(3) did not reach economically or commercially motivated conspiracies, rejecting its use for recovery in the context of a management-labor dispute. *Id.* at 838–39, 103 S.Ct. at 3361. The remaining issues as to the statute's reach were left to the lower courts.

Until but a few months ago, this Court would have been inclined to dismiss plaintiffs' §§ 1985 and 1986 claims simply on the grounds that they failed to allege a racial conspiracy. In construing *Griffin* and *Scott,* the Seventh Circuit has held that § 1985(3) does not apply to nonracial political conspiracies. *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985). *See also Hossman v. Blunk,* 784 F.2d 793, 797 (7th Cir.1986) (per curiam). However, a recent panel of the Seventh Circuit concluded that "§ 1985(3) extends beyond conspiracies to discriminate against persons based on race to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler,* 845 F.2d 1422, 1434 (7th Cir.1988). This, in turn, was followed by an even more recent opinion of the Seventh Circuit in which the panel observed that "[c]hanging interpretation has been the only constant about § 1985(3)." *Stevens v. Tillman,* 855 F.2d 394, 405 (7th Cir.1988). While stating its

---

7. Because liability under § 1986 requires a valid claim under § 1985, the Court need only discuss why plaintiffs have failed to state a claim under § 1985. While plaintiffs did not specify which of the three subsections of § 1985 they were invoking, the language of their complaint closely tracks the language of the second clause of § 1985(2), which creates a cause of action for citizens denied equal protection of the laws as a result of conspiracies aimed at "impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory." As will be seen, the Court's analysis of the plaintiffs' § 1985 claim relies upon cases interpreting § 1985(3), which deals more generally with private conspiracies to deny any person or class "equal protection of the laws" and

"equal privileges and immunities under the laws." Regardless of which subsection of § 1985 the plaintiffs intended to invoke, the Seventh Circuit has held that each requires a showing of discrimination founded upon racial or other invidious class-based animus. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1259 (7th Cir.1984); *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451 (7th Cir.1980). Accordingly, cases construing the sort of class-based discrimination that creates liability under § 1985(3) also guide determinations of liability under the second clause of § 1985(2). Therefore, this Court's reliance upon § 1985(3) case law leads to the same result no matter which subsection of § 1985 plaintiffs base their claim upon.

understanding that § 1985(3) reaches three kinds of racially motivated conspiracies under current Supreme Court precedent, the court parenthetically noted that "[w]hether any other motivation is covered ... [is an] open question[ ]." *Id.* at 404.

As a result of these developments, this Court cannot simply dismiss plaintiffs' §§ 1985 and 1986 claims because of the failure to allege a racially motivated conspiracy. However, plaintiffs have not alleged a conspiracy founded upon any other invidious class-based animus such as sex, religion, ethnicity or political loyalty. Farmers are not a class protected by those statutes. *See Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1429 (8th Cir.1986) (farm couple failed to allege membership in class suffering invidious discrimination); *Trial v. Case,* No. CV87–L–655 (D.Neb. May 12, 1988) [available on WESTLAW, 1988 WL 59964] (1988 U.S. Dist. LEXIS 5746) (rejecting protection for the " 'class of farmers' which has become a target of invidious discrimination by banks."). At most, plaintiffs have alleged a conspiracy to single them out for destruction in order "to abort any attempts by the [plaintiffs] to challenge the banking system and their own actions as a bank and individually." Complaint ¶ 66. Consequently, it appears that plaintiffs have alleged the very sort of economically or commercially motivated conspiracy that falls outside the purview of § 1985(3). *See Scott,* 463 U.S. at 838–39, 103 S.Ct. at 3361. Alternatively, if plaintiffs' complaint were construed instead to state a claim of political persecution, it would fall squarely within *Grimes'*s holding that § 1985(3) does not reach nonracially motivated political conspiracies. *Grimes,* 776 F.2d at 1366.

Therefore, plaintiffs have failed to state a claim under §§ 1985 and 1986, leaving § 1983 as their only conceivable federal cause of action. The Court's reasons for rejecting plaintiffs' § 1983 claims follow.[8]

1. *Judge Mahoney.* Plaintiffs have sued Judge Mahoney for actions he performed as a state trial judge. A judge cannot be held liable in civil damages for actions performed in a judicial capacity. *Forrester v. White,* —— U.S. ——, ——, 108 S.Ct. 538, 543–45, 98 L.Ed.2d 555 (1988); *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Eades v. Sterlinske,* 810 F.2d 723, 725–26 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987). Since plaintiffs can prove no set of facts to support their claim for damages against Judge Mahoney, their complaint against him is dismissed with prejudice. *See Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985).

2. *Sheriff Oefelein and Deputies.* Plaintiffs have sued Stephenson County Sheriff Oefelein and his deputies both in their official capacities and in their personal capacities. In light of all of the parties' submissions to the Court, it is clear that the sheriff and his deputies have been sued for doing nothing more than serve a facially valid writ of replevin issued by a state court judge. Since there is no genuine issue as to any material fact regarding plaintiffs' claims against the sheriff and deputies, the Court grants judgment to these defendants as a matter of law. This outcome is dictated by the Seventh Circuit's decision in *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986).

In official capacity suits, damages may be awarded against a defendant only if they otherwise could be recovered against the government unit employing the defendant. *Id.* at 1238. Plaintiffs have not even named Stephenson County as a defendant, let alone pleaded facts sufficient to hold the county liable under the Civil Rights statutes. Moreover, even if plaintiffs had named the county as a defendant, they could not have prevailed. A govern-

---

**8.** Since the Court rejects plaintiffs' claims under § 1983, it obviously must reject their claim for attorneys fees under § 1988. Furthermore, in the exercise of its discretion, the Court sees no reason to consider the plaintiffs' assertedly pendent or ancillary state claims upon its rejection of their federally based claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In any event, these claims are barred by the Illinois law of res judicata.

mental entity can be held liable under § 1983 only because an official policy or custom works a constitutional deprivation, not because it has happened to employ a tortfeasor. *Id.* at 1237 (explaining *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Since plaintiffs have never set forth facts indicating the existence of an official county policy or custom creating the possibility of government liability, their official capacity claims against the defendants must fall.

[redacted] As for plaintiffs' claims against the sheriff and deputies in their personal capacities, these likewise fall because of the absolute immunity accorded non-judicial officials for their quasi-judicial conduct. *Henry,* 808 F.2d at 1238–39. In *Henry,* plaintiffs brought § 1983 actions against a sheriff and police chief for their role in enforcing a foreclosure judgment. In upholding the district court's dismissal of plaintiffs' claims, the Seventh Circuit held that "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Id.* at 1239. This holding controls the result reached here, and judgment is granted for the sheriff and deputies.[9]

[redacted] 3. *German–American State Bank.* Plaintiffs' claims against the German–American State Bank arise from the bank's institution of the replevin action, which culminated in the state Circuit Court's entry of judgment in the matter by the consent of the parties on November 8, 1985. The judgment has been affirmed on appeal in the state courts, and the Supreme Court of the United States has declined review. Yet plaintiffs now ask this Court to award them damages against the bank even though they previously had consented to the entry of a judgment releasing the bank from any claims they might have asserted against it. In light of these uncontested facts, judgment is properly entered here in favor of the bank.

This Court is bound by 28 U.S.C. § 1738 to accord a state court judgment the same preclusive effect as would the courts of the state in which it was rendered. In this instance, that means applying the Illinois law of res judicata to the Circuit Court's decision. Under Illinois law, the affirmative defense of res judicata may be raised when there are (1) identical parties or their privies; (2) identical causes of action in the two suits; and (3) a final judgment on the merits rendered in the prior action by a court of competent jurisdiction. *LaSalle National Bank of Chicago v. DuPage County,* 856 F.2d 925, 930 (7th Cir.1988). An additional requirement that has been identified is whether any of the claims advanced in the subsequent suit could have been made in the prior suit. *Kirk v. Bremen Board of Education,* 811 F.2d 347, 356 n. 13 (7th Cir.1987). Once res judicata has been found to apply, the doctrine bars relitigation of not only matters actually raised in the prior suit, but also matters that could have been raised.[10] *LaSalle,* at 930.

The bank has raised the defense of res judicata. There being no question as to the identity of the parties in the state replevin action and this case, the Court turns to the other elements of the doctrine.

**9.** Although the Court has concluded that plaintiffs failed to state a claim under §§ 1985 and 1986, its conclusion regarding the immunity of the sheriff and his deputies would be the same even if plaintiffs had properly alleged an invidious class-based conspiracy giving rise to a cause of action under those statutes. Although the Seventh Circuit apparently has not addressed the point, this Court believes it likely that the appellate court would extend the absolute immunity for quasi-judicial acts to suits brought under §§ 1985 and 1986. *Cf. Lawrence v. Acree,* 665 F.2d 1319 (D.C. Cir.1981) (per curiam) (applying immunity principles of constitutional tort and § 1983 cases to § 1985(1) action).

**10.** It is irrelevant whether the claims in the subsequent suit properly would have been raised as defenses or counterclaims in the prior suit. *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1234 (7th Cir.1986) ("A defendant ... may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment.").

The initial, essential inquiry is whether the causes of action in the two proceedings are identical. While the Illinois courts have adopted varying formulations of the appropriate test, the fundamental question is whether the two suits are based upon the same evidence or the same core of operative facts, such that a party cannot maintain more than one suit based on the same facts by simply altering the claim for relief in subsequent actions. *LaSalle*, at 932. Here, it cannot be denied that the cause of action in the state court case is identical to the cause of action here. All of plaintiffs' claims before this Court arise from the allegedly wrongful manner in which plaintiffs' property was replevied and sold. Accordingly, the identical cause of action requirement is met. *See Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986) (affirming the dismissal of federal racketeering and § 1983 claims arising from previously decided and affirmed state court foreclosure action).

Next, applying Illinois law, the Court concludes that there has been a final judgment on the merits previously rendered by a court of competent jurisdiction. The plaintiffs here originally consented to the entry of judgment in the state Circuit Court to resolve their case. Illinois law holds consent judgments to be final judgments on the merits entitled to respect under res judicata. *Adams v. Adams*, 398 Ill. 581, 76 N.E.2d 495 (1947); *Barth v. Reagan*, 146 Ill.App.3d 1058, 100 Ill.Dec. 541, 497 N.E.2d 519 (2d Dist.1986). Moreover, the Circuit Court clearly was a court of competent jurisdiction to consider the state-law replevin action.[11] Consequently, the Court moves on to consider whether the claims raised here could have been asserted in the previous action.

■ Illinois courts are constitutionally adequate forums for the litigation of federal constitutional and statutory claims, unless federal law has vested jurisdiction exclusively in the federal courts. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3527 (2d ed. 1984 & Supp.1987). None of the assorted claims so liberally scattered throughout the mass of word-processed pleadings and memoranda submitted by plaintiffs to this Court is committed exclusively to the jurisdiction of the federal courts. Particularly, plaintiffs should note that Civil Rights actions are not matters of exclusive federal jurisdiction. *Id.* at 245.[12] Therefore, any

11. In addition to their argument, rejected by the state Appellate Court, that the Circuit Court lacked jurisdiction under federal law, plaintiffs assert here that the state court lacked jurisdiction under state law due to the alleged failure to comply with various requirements of the Illinois replevin statute. Ill.Rev.Stat. ch. 110, ¶¶ 19-101–19-128 (1984). Plaintiffs contend that any failure to comply with the procedures mandated in the replevin statute deprives a state court of jurisdiction, leaving its judgments open to collateral attack. Whatever truth that proposition might ever have had, under the current Illinois constitution, state circuit courts possess original jurisdiction to consider any justiciable matter not committed to the exclusive original jurisdiction of the state Supreme Court. Ill. Const. Art. VI, § 9. Even if the procedures followed in the state replevin action were in some manner deficient—an issue which this Court does not consider—the consequence would be simply that the Circuit Court's decision would be subject to reversal upon appeal, not to collateral attack in federal court. *See People v. Valdez*, 79 Ill.2d 74, 84–85, 37 Ill.Dec. 297, 402 N.E.2d 187 (1980) (state court jurisdiction flows from Illinois constitution, not state statutes); *McGinnis Plumbing Co. v. Zeus Development Corp.*, 119 Ill.App.3d 1096, 1099–1100, 75 Ill.Dec. 617, 457 N.E.2d

1059 (2d Dist.1983) (failure to comply with all procedural requirements of attachment statute does not deprive circuit court of jurisdiction under current Illinois constitution). In addition, failure to bring a replevin action for good cause subjects the complaining party to liability in damages to the wronged party, but does not render the replevin proceedings void. *See International Harvester Credit Corp. v. Helland*, 151 Ill.App.3d 848, 856, 104 Ill.Dec. 833, 503 N.E.2d 548 (2d Dist.1986) (damages awarded party whose goods were wrongfully replevied by party not possessing valid security interest in goods). Of course, plaintiffs could have pursued their damage claims arising from the replevin proceeding in the state court, but instead agreed to release the bank from any potential liability.

12. Obviously, any of the plaintiffs' state court claims asserted here could have been heard in the state court. For example, plaintiffs contend that Donald Hunziker's signature on a security agreement was forged. Complaint ¶¶ 17, 24. The defense of forgery is raised properly in replevin proceedings. *See Miller v. Bank of Pecatonica*, 83 Ill.App.3d 424, 38 Ill.Dec. 658, 403 N.E.2d 1262 (2d Dist.1980) (damages awarded to successful replevin defendant who proved

claims advanced here could have been raised in the state replevin proceedings.[13] *See Frier v. Vandalia*, 770 F.2d 699 (7th Cir.1985) (because § 1983 plaintiff could have raised constitutional claims in prior state replevin action, subsequent § 1983 action was precluded by Illinois rule of res judicata). *Compare Henry*, 808 F.2d 1228 (state foreclosure judgment precluded subsequent federal racketeering and § 1983 claims). Since all requirements for res judicata have been established, judgment for the bank is properly entered.

■ *4. German–American State Bank Officers, Directors, Employees and Lawyers.* Res judicata also disposes of plaintiffs' claims against the bank's various representatives, who have also raised that defense. As noted above, res judicata forecloses relitigation of claims against not only parties, but also their privies. In *Henry*, federal court plaintiffs seeking to overturn a previously decided state foreclosure action named as defendants the bank which brought the foreclosure proceeding as well as its officers, directors, employees and lawyers. 808 F.2d 1228. In a holding that is dispositive here, the Seventh Circuit concluded that the additionally named defendants were privies of the bank for purposes of res judicata. *Id.* at 1235 n. 6. Judgment thus is entered for the German–American bank's officers, directors, employees and lawyers.

*Rule 11 Sanctions*

■ As has become the recent custom in federal litigation, several defendants in this case have requested the imposition of sanctions pursuant to Fed.R.Civ.P. 11. Based solely upon the submissions currently before it, the Court is not inclined to sanction plaintiffs. If any of the defendants wish to pursue this request further, the Court will set a pretrial conference to determine what further proceedings are appropriate. The Court observes, however, that even should it ultimately find that sanctions are warranted, the record indicates that the plaintiffs are likely to be judgment proof. In this regard, potential movants should note that the Seventh Circuit has stated that "equitable factors may be an ingredient" in determining the amount of a Rule 11 award. *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1439 (7th Cir.1987). In particular, the Seventh Circuit has indicated that an appropriate equitable consideration is the sanctioned party's personal assets. *Id.*

*Conclusion*

For the foregoing reasons, defendant Mahoney's motion to dismiss is granted with prejudice. The remaining defendants' motions for summary judgment are grant-

that bank altered security agreement). But even federal constitutional claims are raised properly in Illinois replevin actions, and failure to do so has been held to subject a party to the bar of res judicata in a subsequent § 1983 case in federal court. *Frier v. Vandalia*, 770 F.2d 699, 703 (7th Cir.1985) ("Here the replevin theory contained the elements that make up a due process theory, and we are therefore confident that the courts of Illinois would treat both theories as one 'cause of action.'"). It should be noted that plaintiffs appear to have raised many of the arguments they make here at various points in the state replevin proceedings prior to the Circuit Court's entry of judgment. To the extent they did so, relitigation of those claims is barred by res judicata.

13. Plaintiffs can take no refuge from the doctrine of res judicata in *Miller v. Bank of Pecatonica*, 83 Ill.App.3d 424, 38 Ill.Dec. 658, 403 N.E.2d 1262 (2d Dist.1980) (party successfully disputing ex parte replevin of property permitted to bring later action for damages). As the Sev-

enth Circuit explained in *Henry*, *Miller* applies only to subsequent actions brought by parties whose goods previously had been improperly replevied upon an ex parte writ and who successfully contested the replevin of the goods in the follow-up adversarial hearing. 808 F.2d at 1236 n. 7. "As long as [plaintiffs] had raised their fraud and forgery defenses in the mortgage foreclosure proceedings *and prevailed,* they would not have been required to assert a counterclaim for damages at the same time if to do so would have been inconvenient or strategically inadvisable." *Id.* (emphasis added). Here, plaintiffs did not prevail in the replevin proceedings; instead, they negotiated a settlement whereby they released the bank from further claims in exchange for a release from personal liability for any deficiency on their outstanding debt. Moreover, they agreed to entry of the compromise as final judgment in the case.

ed. Plaintiffs' cross-motion for summary judgment is denied.

Plaintiffs in this case have demonstrated to the Court a propensity to seek continued relitigation of the controversy, despite the existence of a valid and binding judgment by the state court.[14] In light of the Court's decision today, further federal complaints by plaintiffs regarding the state replevin proceedings would be improper. Accordingly, the Court enjoins plaintiffs from filing with the Clerk of the United States District Court for the Northern District of Illinois any further complaints, motions, or documents of any kind concerning the subject matter of this action without first obtaining permission of the Executive Committee of the United States District Court for the Northern District of Illinois.

---

**14.** *See* "Supplemental Resistance to Bank Defendants' Motion to Dismiss," at 6 ("At some point in time, in some court, the law will prevail and Plaintiffs are being continually damaged until such time."). *See also Andersen v. Roszkowski,* 681 F.Supp. 1284, 1293 (N.D.Ill.1988).