William FINCH, Plaintiff,

v.

Lynn L. CHAPMAN, MACM, and United States of America, Defendants.

No. 89 C 8497.

United States District Court,
N.D. Illinois, E.D.

Feb. 4, 1992.

See also, 763 F.Supp. 967.

Daniel Thomas Crowe, McLennon & Jackman, Robert A. Holstein, Holstein, Mack & Klein, Chicago, Ill., for plaintiff.

Sharon J. Coleman, U.S. Atty.'s Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants Lynn L. Chapman and the United States of America have moved to dismiss (or, alternatively, for summary judgment on) plaintiff William Finch's second amended complaint. Finch alleges constitutional and common law wrongdoing stemming from his second mistaken arrest as a supposed Naval deserter. Although we sympathize with Finch and find his treatment deplorable, we are required to grant the defendants' motion for dismissal and summary judgment.

### I. Factual Background

#### A. *The Two Arrests*

After being arrested by Illinois state police officers on suspicion of desertion from the Navy, Finch—who had never been in the Navy—spent the night of September 25, 1988 in the LaSalle County Jail. The next day, Naval Absentee Collection Unit ("NACU") officers transported Finch to the Great Lakes Naval Base in Great Lakes, Illinois. After being processed, Finch spent the night in custody along with other Naval absentees. On September 27, officials apparently shaved Finch's head and ordered him to perform physical labor on the grounds of the base. Only late in the day was he permitted to make his first telephone call. On September 28, Finch was released after an attorney filed a writ of habeas corpus with U.S. District Court Judge Charles R. Norgle, Sr.

As it turns out, a "William A. Finch" was wanted for desertion, having jumped the U.S.S. Theodore Roosevelt on January 6, 1987. This fake Finch, whose real name is Dartanyian Morgan, had at one time been a neighbor of the real Finch. Morgan apparently enlisted in the Navy using Finch's name, social security number, and other personal information.

What makes Finch's second wrongful arrest and subsequent detention at the Great Lakes base particularly egregious, however, is that he had already been down that road once, some fifteen months earlier. On July 3, 1987, Chicago police officers arrested him, held him overnight, and released him the next day to two NACU officers for transport to Great Lakes. Finch managed to convince the relevant authorities that he was not the man they were looking for, and was released. Naval records apparently indicate that Morgan stands 5'4" and

weighs 144 pounds; Finch is 5'7½" tall and weighs 222 pounds.

### B. *Relevant NACU Procedures*

Finch does not meaningfully dispute Chapman's description of the relevant NACU policies and procedures.[1] Those policies and procedures are as follows. When Morgan (then known to the Navy as Finch) deserted the U.S.S. Theodore Roosevelt on January 6, 1987, ship officials prepared a Department of Defense Form 553, "Absentee/Deserter Wanted by the Armed Forces" ("DD 553"). Those officials sent the DD 553 to the Navy's Deserter Information Point at the Bureau of Naval Personnel ("BUPERS") in Arlington, Virginia. BUPERS personnel cross-checked and verified the information on the DD 553 with the Bureau's on-line computer records, then entered that information into the National Crime Information Center ("NCIC") Wanted Persons file. The NCIC file is maintained by the Federal Bureau of Investigation ("FBI") and used nationally by law enforcement personnel.

If and when a civilian law enforcement officer arrests a suspected deserter, the civilian agency contacts the Navy Deserter Information Point ("DIP") at BUPERS. DIP subsequently contacts the nearest NACU, and NACU personnel retrieve the suspected deserter from the reporting civilian law enforcement agency and return that person to the appropriate Navy command.

Chapman was the Chief Petty Officer-in-Charge of the Great Lakes NACU between February 1986 and March 1989. In this capacity she was responsible for supervising the daily operational and administrative functions of the fifteen-member NACU. At the time of Finch's second arrest, Chapman was on leave in Colorado. Some time prior to September 25, 1988, Chapman had removed Finch's NACU file from the office filing system, apparently to review it. The file contained the history of Finch's 1987 arrest, his medical records, and detailed the reasons for his subsequent release. This file was either in Chapman's desk or an office safe and was unavailable

to the acting NACU supervisor when Finch was brought in the second time. The "resolution of the 1988 incident," Finch later reported, "was compounded with additonal [sic] problems" because she had the case file and neither it nor she were immediately available. Finch Memorandum (Dec. 21, 1988).

There is no dispute that, as NACU Chief Petty Officer–in–Charge, Chapman had authority to remove NACU case files from the office filing system for review. Further, there is no meaningful claim by Finch regarding Chapman's authority or obligation to "update" DD 553 information or NCIC Wanted Persons data; quite simply, she "was not authorized, or required, at any time to change, amend, delete, 'correct' or 'update', the information contained in either Finch's DD 553 or the FBI's NCIC Wanted Persons file after plaintiff's 1987 arrest. Any [such] changes, clarifying remarks or deletions ... are made only at the DIP, BUPERS, Arlington, VA." Chapman Declaration ¶ 11 (Sept. 24, 1991). Nor was Chapman

> authorized, or required, to "correct" or amend [Finch]'s DD 553 or FBI NCIC information to indicate that there was an individual using William Finch as an alias. Further, I was also not authorized, at any time, to contact or otherwise notify state law enforcement agencies concerning changes or deletions to Finch's DD 553, or indicate that there was an individual using William Finch as an alias.

*Id.*

### II. Procedural Background

Finch filed his original complaint on November 14, 1989. The four-count action alleged constitutional torts, 42 U.S.C. § 1983 (1988) violations, and various state law torts against the United States (and specifically the Navy). An amended complaint, filed May 17, 1990, named Robert R. George, Elva J. Kopenhafer, Robert Harvey (all Naval officers), and "certain unknown Naval officers" as defendants. The

---

**1.** *See* discussion of Rule 12(m) and 12(n) issues, *infra.*

United States then moved for dismissal (or summary judgment) to the extent that Finch was asserting a claim against it. When Finch failed to respond to the United States' motion, we granted it pursuant to Local Rule 12(p). We noted in the minute order that dismissal was *"with prejudice"* and emphasized that, although Local Rule 12(p) was reason enough to grant the motion, the United States had apparently not waived its sovereign immunity to any of Finch's claims. *Finch v. United States,* No. 89 C 8497 (July 3, 1990) (emphasis added).

We subsequently amended the July 3, 1990 order on Finch's motion for clarification. The United States' motion sought relief only as to the Navy and its officers acting in their official capacities. Finch's amended complaint named George, Kopenhafer, Harvey, and the unknown officers in their individual and official capacities. *Finch v. United States,* No. 89 C 8497 (Aug. 8, 1990). Finch correctly pointed out in his motion for clarification that the individual capacity claims were still alive.

On February 13, 1991, after full briefing by the parties, we dismissed Finch's amended complaint as it pertained to George and Harvey. We also dismissed the common law tort and constitutional negligence claims against Kopenhafer, and granted summary judgment for Kopenhafer on the remaining counts.

We permitted Finch to file a second amended complaint on May 7, 1991. That complaint named Chapman as the sole defendant. We denied Chapman's motion to dismiss, see *Finch v. Chapman,* No. 89 C 8497 (Aug. 6, 1991), and, on the United States' motion, substituted the United States as defendant for Chapman with respect to Counts II, III, and IV. *Finch v. Chapman,* No. 89 C 8497 (Oct. 18, 1991).

### III. Analysis

Count I of Finch's second amended complaint charges violation of his Fourth, Fifth, and Fourteenth Amendment rights stemming from "Chapman's failure to update William Finch's record after the July 4, 1987 arrest," such failure "caus[ing] the unreasonable and unwarranted detention of

William Finch in September, 1988...." It is the only remaining count against Chapman. Count II alleges that Finch's character has been damaged "in that he has been known and made known in public to be an alleged deserter from the United States Navy." Count III alleges state-law battery and defamation, and Count IV charges false imprisonment and intentional infliction of emotional distress. Counts II–IV are against the United States.

 Our July 3, 1990 order bars Finch from attempting to relitigate any claim against the United States. As explained above, we granted the United States' motion and dismissed Finch's amended complaint "with prejudice." The subsequent substitution of the United States for Chapman with respect to Counts II–IV is, in effect, a dismissal of those counts. The doctrine of res judicata is applied where there are identical parties, identical causes of action, and a final judgment. *LaSalle Nat'l Bank of Chicago v. DuPage Co.,* 856 F.2d 925, 930 (7th Cir.1988), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). The causes of action are identical if the two suits "are based upon the same evidence or the same core of operative facts...." *Hunziker v. German-American State Bank,* 697 F.Supp. 1007, 1014 (N.D.Ill.1988), *aff'd,* 908 F.2d 975 (7th Cir.1990). It is clear here that these elements of the test have been met, and res judicata applies to bar any of Finch's claims against the United States if, in addition to the three elements already identified, "any of the claims advanced in the subsequent suit could have been made in the prior suit." *Id.* at 1013; *see also Hagee v. City of Evanston,* 729 F.2d 510, 514 (7th Cir.1984) ("res judicata extends to all matters within the purview of the original action, whether or not they were actually raised, ... [and] requir[es] parties to consolidate all closely related matters into one suit"). Certainly that is the case in this instance.

Finch's argument that the July 3, 1990 order "was not with prejudice," Response at 10, is flawed. His underlying rationale appears to be that, because we later mod-

ified the order, it was not a final adjudication, and res judicata is inapplicable. The July 3 order was final, however, with respect to all claims against the United States. Finch himself recognized this fact when he moved the court to modify the order and reinstate the complaint against the individual Naval officers. All state and common law claims against the United States stemming from Finch's second arrest were dismissed with prejudice, and Finch may not now relitigate those claims.

■ As to Count I, the remaining count of the complaint alleging constitutional violations by Chapman, Finch fails to properly respond to the Chapman's motion for summary judgment. Local Rule 12(n) requires a party opposing summary judgment to

> serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's [Rule 12(m)] statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. *All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.*

Local Rule 12(n) (emphasis added).

Here, Finch fails to file any kind of Rule 12(n) statement of facts. We have no

choice but to rely on the facts submitted by Chapman.[2]

■ The undisputed facts establish that Chapman is entitled to qualified immunity from civil damages liability. Generally speaking, "[g]overnment officials performing discretionary functions ... are shielded" from civil liability unless they violate "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is "clearly established" if it is "sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right. This is ... to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ The Seventh Circuit has established a two-step approach to qualified immunity questions, based on *Harlow* and *Anderson.* First, a defendant's actions must be "defined or characterized according to the specific facts of the case." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Second, a court must look "to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Id.; see also Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 675 (7th Cir.1990). Finch, as the plaintiff, bears the burden of establishing that the constitutional right in question

---

**2.** Of course, under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Finch, the non-moving party, has utterly failed to shoulder his Rule 56(e) burden, as evidenced by his failure to file a Local Rule 12(n) statement of facts.

was clearly established. *Rakovich*, 850 F.2d at 1209.

Finch's contention is that Chapman's failure to correct, update, or amend the records maintained by the Navy or the FBI on "William A. Finch" violated a clearly established constitutional right of which a reasonable official would have known at the time of her conduct. Significantly, he offers no authority—no constitutional, statutory, or case law—to support this contention.

The Naval regulations that he does cite are not applicable to Chapman. Navy Military Personnel Command Instruction ("NAVMILPERSCOMINST") 1600.3 is the Standard Operations Manual for the Navy Deserter Branch/Deserter Apprehension Program located at BUPERS in Arlington, Virginia. Reply at 10. NAVMILPERSCOMINST 1600.3 does require that the Navy Deserter Branch/Deserter Apprehension Program "[m]aintain all information and statistical data relating to deserters and to the Deserter Apprehension Program; provide data to the National Crime Information System and government agencies as required and utilize internally for program monitoring and evaluating." NAVMILPERSCOMINST 1600.3, § 202(e) (Sept.1985). However, the provisions of NAVMILPERSCOMINST 1600.3 are not applicable to Chapman and are not the Standard Operations Manual for Chapman's NACU, Reply at 9–10, and therefore place no legal obligation on Chapman.

Each component of the Navy's Deserter Apprehension Program has its own responsibilities, as set forth in Secretary of the Navy ("SECNAVINST") 1620.7. Operationally, SECNAVINST 1620.7 establishes a centralized DIP, or Deserter Information Point, and many field NACUs. SECNAVINST 1620.7 ¶ 5(a)(1), (a)(2) (May 1980). The Navy DIP is the Navy Deserter Branch/Deserter Apprehension Program in Arlington. Chapman Declaration ¶ 5. The pertinent regulations make it clear that the Navy Deserter Branch/Deserter Apprehension Program has the responsibility to control, account for, and disseminate "absentee and deserter information." *Id.*

¶ 5(a)(1); NAVMILPERSCOMINST 1600.3, § 202(e). Chapman, the Great Lakes NACU supervisor, was under no legal requirement and had no authority to correct Finch's records or provide correct information to the NCIC and other law enforcement agencies. Her conduct did not violate any of Finch's clearly established constitutional or statutory rights of which a reasonable person would have known. Therefore, she is entitled to qualified immunity, and we grant summary judgment in her favor.

■ Chapman's candid acknowledgment that Finch's second arrest "is a cumulation of errors which I set in motion by not following through on an investigative lead in July 1987," that, as a result, "a snowball turned into an avalanche," and that she "take[s] responsibility" for the incident, Finch Memorandum (Dec. 21, 1988), is insufficient to rescue Finch's claim. That Chapman felt some sort of moral responsibility for Finch's second arrest and detention does not translate into legal liability, particularly given the above discussion of the applicable rules and regulations.

The fact that Finch is unable to maintain a legal claim to redress his injuries is not to suggest that the Navy should be proud of its role in the September 1988 arrest and detention. Chapman, before her retirement, instituted a series of procedures to be followed at the Great Lakes NACU "to minimize the possibility of a similar ... situation" occurring again. Finch Memorandum (Dec. 21, 1988). Hopefully, as a result of this litigation, that what happened to Finch will not happen to anyone else.

## IV. Conclusion

We grant summary judgment in Chapman's favor on Count I because she is qualifiedly immune from suit; the alleged right in question was not clearly established in reference to the facts of this case. We dismiss Counts II, III, and IV against the United States on res judicata grounds. It is so ordered.